J-S06010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LUIS M. SOTO | |
| Appellant | No. 61 EDA 2016 |

Appeal from the Judgment of Sentence December 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007170-2013
CP-51-CR-0007171-2013
CP-51-CR-0007172-2013
CP-51-CR-0007173-2013

BEFORE: MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.: **Filed August 1, 2017**

Luis M. Soto appeals from the December 4, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his convictions for third-degree murder, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, possessing an instrument of crime ("PIC"), and three counts of aggravated assault – causing serious bodily injury.[1]  Soto's appellate counsel has filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and a petition to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 6106(a)(1), 6108, 907(a), and 2702(a)(1), respectively.

withdraw from representation. We affirm and grant counsel's petition to withdraw. We also dismiss Soto's claims for ineffective assistance of counsel without prejudice.

The trial court summarized the factual history of this matter as follows:

On April 9, 2013, in the late afternoon hours, a large crowd of people gathered at Water and Somerset Streets in Philadelphia. A fight subsequently broke out between several female members of this crowd, when three unknown women attacked Ashley Soberal. Amanda Martinez, the decedent, was amongst the crowd, watching the fight. After the fight, [Soto] and an unnamed friend had a conversation in a nearby lot on Somerset Street with Madeline Soberal, the mother of the girl who had been attacked.[2] There was a large crowd of people in the lot at this time. While [Soto], his friend and Madeline Soberal were talking, [Soto] had his hands in the area of his waist, as if he was in possession of a firearm. Madeline Soberal believed that [Soto] and his friend were responsible for the three women attacking her daughter. After she asked [Soto]'s friend multiple times whether he got the three women to "jump" Madeline Soberal's daughter, [Soto]'s friend admitted that he did so. Right after that admission, someone from the crowd came from behind her and punched [Soto]'s friend in the face. After his friend was punched, [Soto] drew a firearm and began shooting multiple times at the crowd. As [Soto] fired, the crowd began to flee the area. Madeline Soberal took cover behind a Buick where she encountered Amanda Martinez, who had been struck by a bullet and who asked Soberal to stay with her. Soberal told Martinez that she would stay with her until an ambulance arrived. As [Soto] left the area, he was still in possession of the firearm.

[2] [Soto] was also identified as "Bebe."

Police responded at approximately 5:50 p.m. Upon arriving at the scene, police encountered a chaotic crowd of over 100 people and attempted to locate any victims,

- 2 -

finding Martinez laying in a pool of blood. Martinez was placed into a private vehicle and rushed to Episcopal Hospital. Martinez was later pronounced dead at the hospital, having suffered a gunshot wound which penetrated her chest, heart, and lungs. Police also identified Jose Torres, Carl Walden and Larry Robinson as shooting victims. Torres had been shot twice in the groin area. Walden had been shot in his right leg.[3] Both Torres and Walden were transported to Temple University Hospital for medical care. Robinson was transported to Episcopal Hospital by private vehicle, where he was treated for a gunshot wound to his stomach.

> [3] Walden was also identified as "Panama."

Seven .40 caliber Smith & Wesson fired cartridge casings were recovered at the scene. Police also recovered two bullet specimens, a bullet jacket, and a bullet core. Subsequent analysis showed that the bullets and bullet jacket were all fired from the same firearm. All seven cartridge casings were also fired from the same weapon.

Opinion, 2/24/16, at 2-4 ("1925(a) Op.") (internal citations omitted).

On August 31, 2015, a jury convicted Soto of the aforementioned charges. On December 4, 2015, the trial court sentenced Soto to an aggregate term of 50 to 100 years' incarceration. On December 9, 2015, Soto filed a timely notice of appeal.[2]

---

[2] On December 18, 2015, Soto filed a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On May 13, 2016, Soto's counsel, who also represented him at trial, filed a motion to withdraw. On June 6, 2016, this Court granted the motion, and directed the trial court to determine Soto's eligibility for court-appointed counsel within 60 days. On July 15, 2016, the trial court appointed Gary S. Server, Esquire, as Soto's appellate counsel.

Because counsel has filed a petition to withdraw pursuant to **Anders** and its Pennsylvania counterpart, **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), we must address counsel's petition before reviewing the merits of Soto's underlying claims. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007). We first address whether counsel's petition to withdraw satisfies the procedural requirements of **Anders**. To be permitted to withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Here, appellate counsel has stated that after a "thorough and conscientious examination of the record," he believes "that this appeal in its present procedural posture is wholly frivolous and without support in the law or the facts." Mot. to Withdraw, 11/3/16, at 1. Appellate counsel furnished a copy of the **Anders** brief to Soto, as well as a letter advising him that he had "the right to personally participate in the appeal and to file a writing of your own with the Superior Court of Pennsylvania. You may also hire counsel to represent you and to file whatever is deemed appropriate to protect your interests." Ltr. to Soto, 10/31/16. We conclude that counsel's petition to withdraw has complied with the procedural dictates of **Anders**.

- 4 -

We next address whether counsel's **Anders** brief meets the requirements established by the Pennsylvania Supreme Court in **Santiago**. The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Here, appellate counsel has provided a summary of the procedural history and the facts with appropriate citations to the record. **Anders** Br. at 8-19. Counsel's brief states that he conducted a thorough and objective review of the record and concluded that the record does not support the appeal and that the appeal is frivolous, while setting forth his reasons for his conclusion. **Anders** Br. at 22. Accordingly, appellate counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Soto has not filed a *pro se* brief or a counseled brief with new, privately-retained counsel. We, therefore, review the issues raised in the **Anders** brief.

The following issues[3] were raised in the **Anders** brief:

Specific issues raised by [Soto] on direct appeal

[1.] Whether the court erred by not granting a mistrial when the Commonwealth's witness referenced the criminal history and dangerousness of [Soto].

[2.] Whether the Commonwealth's evidence and argument about fear and danger was inappropriate and prejudicial since there was absolutely no evidence that [Soto] or anyone associated to him had any contact with any witness or engaged in any intimidation.

[3.] Whether the admission of a text to a witness'[s] daughter was error because it was not related to [Soto] or to anyone associated with [Soto].

[4.] Whether Detective [David] Schmidt's testimony regarding a 911 recording that said the "man responsible for the shooting owned the vehicle" where the vehicle in question was [Soto]'s vehicle should have been excluded as inadmissible hearsay.

Issues that could have been raised by [Soto] on direct appeal but were not

[5.] Whether [Soto] was provided with ineffective assistance of counsel where trial counsel:

1. Failed to file post sentence motions challenging the weight of the evidence or the discretionary aspects of sentencing;

2. Conducted cross-examinations of Commonwealth witnesses that had them

---

[3] Soto also raises a "global question" that reads as follows: "Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous." **Anders** Br. at 6. We will not address Soto's "global question" as it does not raise a specific issue for our review.

repeat damaging inculpatory evidence over and over again;

3. Engaged in conduct that was disrespectful and disobedient to the court before the jury;

4. Engaged in loud, arrogant, angry and badgering examinations of witnesses.

[6.] Whether [Soto]'s convictions for third degree murder and aggravated assault-causing serious bodily injury were against the weight and credibility of the evidence.

[7.] Whether [Soto]'s convictions for third degree murder and aggravated assault-causing serious bodily injury were based upon insufficient evidence.

*Anders* Br. at 6-7 (full capitalization and answers below omitted).

First, Soto contends the trial court erred in denying his request for a mistrial after one of the Commonwealth's witnesses referenced Soto's criminal history and "dangerousness."

Our standard of review of a trial court's refusal to grant a motion for a mistral is whether the trial court abused its discretion. *Commonwealth v. Savage*, 602 A.2d 309, 312 (Pa. 1992). The Supreme Court has stated:

[T]he remedy of a mistrial is an extreme one. . . . It is primarily within the trial court's discretion to determine whether Appellant was prejudiced by the event that forms the substance of the motion. Finally, it must be remembered that a mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial.

*Commonwealth v. Lease*, 703 A.2d 506, 508 (Pa.Super. 1997) (quoting *Commonwealth v. Montgomery*, 626 A.2d 109, 112-13 (Pa. 1993)). Furthermore,

> [a] trial court may remove taint caused by improper testimony through curative instructions. Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate.

*Commonwealth v. Manley*, 985 A.2d 256, 266–67 (Pa.Super. 2009) (quotation and internal citations omitted).

Here, while on cross-examination, Commonwealth witness Madeline Soberal asked Soto's counsel whether he had checked Soto's background. 1925(a) Op. at 5. She then stated that she feared for her family and children. *Id.* Soto's counsel requested a mistrial at the next break, claiming that Soberal had effectively revealed Soto's criminal background with her statements. *Id.* at 6. The trial court found:

> The record establishes that a mistrial was not required. Soberal's question about [Soto]'s background was not elicited by the Commonwealth, but by [Soto]'s attorney during a heated cross-examination. Additionally, the Commonwealth did not exploit the challenged testimony in any manner. Finally, the Court immediately gave a curative instruction to the jury, directing them to disregard the statement. Under these circumstances, it is clear that Soberal's brief reference to [Soto]'s "background" did not have the unavoidable effect of denying [Soto] a fair trial. Accordingly, the Court correctly denied [Soto]'s motion for mistrial.

*Id.* at 6 (internal citations omitted). We agree. Accordingly, we conclude that the trial court did not abuse its discretion in denying Soto's request for a mistrial.

Next, Soto contends that "the Commonwealth's evidence about fear and danger was inappropriate and prejudicial since there was absolutely no evidence that [Soto] or anyone associated to him" contacted or intimidated witnesses. **Anders** Br. at 34. Specifically, this claim refers to evidence regarding a post to the social media website Instagram.

The trial court described the post as follows:

> During the first day of testimony, the Commonwealth informed the Court that its witness Madeline Soberal had seen a copy of an online posting, which she believed to be threatening in nature. N.T. 8/26/15 at 193-194. In particular, Soberal's daughter forwarded to Soberal a posting on Instagram by [Soto]'s brother-in-law stating the following:
>
>> On my way to support my boy, bebesky [[Soto]'s nickname]!!! Its crazy how they charging my boy 4suming [sic] he aint even do, its cool doe [sic] cuz we about to rumble n god [sic] his BACK...
>
> N.T. 8/26/15 at 223, Commonwealth Exhibit C-87.
>
> Because of the alleged threat, the Commonwealth requested that the Court exclude all spectators from the courtroom for the duration of Soberal's testimony. The defendant objected to any members of the public being excluded. Therefore, the Court held an *in camera* hearing to determine if closure of the courtroom during Soberal's testimony was permissible. Following the hearing, the Court denied the Commonwealth's request to close the courtroom.

1925(a) Op. at 7-8 (internal citations omitted) (some alterations in original). Soberal then testified, during which the Commonwealth inquired about the post. After some discussion between counsel and the trial court, the court allowed the assistant district attorney ("ADA") trying the case to read the

Instagram post into the record. N.T., 8/26/15, at 300-04. Defense counsel requested that the entirety of the post be read aloud. *Id.* at 302. After the ADA began to read, defense counsel objected to his "mannerisms" and requested that another party read the post; however, defense counsel made clear that he was not objecting to the contents of the post being read. *Id.* at 304. Thereafter, the court allowed the ADA to read the remainder of the post.

Because defense counsel did not make a contemporaneous objection to the admission of the Instagram post into evidence, this issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Soto's similar claim regarding the Commonwealth's closing argument, in which "the prosecutor referred to the Instagram posting and Soberal's fearful reaction to it[,]" 1925(a) Op. at 9, is also waived, because defense counsel did not make a contemporaneous objection. *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008) ("The absence of a contemporaneous objection below constitutes a waiver of appellant's current claim respecting the prosecutor's closing argument.").

Soto next contends that the trial court erred in admitting a text message sent to Soberal's daughters. Appellate counsel concedes in his *Anders* brief that he "has absolutely no idea what [Soto] is raising here." *Anders* Br. at 36. It appears the "text" in question may be the same thing

as the Instagram post. In any event, because Soto did not object to the admission of any text messages at trial, he has waived this claim. ***See*** Pa.R.A.P. 302(a).

Soto next claims that the police detective's testimony regarding a 911 call, which identified the shooter as the owner of a vehicle found at the scene, should have been excluded. The trial court stated:

> To the extent that [Soto] is claiming that the admission of the testimony regarding the 9-1-1 caller was error, his claim is frivolous. [Soto] objected to this testimony and the Court immediately sustained the objection, struck the evidence, and directed the jury to disregard it. N.T. 8/27/15 at 161-162. **Accordingly, the challenged evidence was never admitted by the Court.**
>
> Later in the trial, [Soto] moved for a mistrial based on the Detective's testimony regarding the 9-1-1 statement. N.T. 8/27/15 at 217-218. To the extent that [Soto] is attempting (without saying so) to challenge the Court's decision denying his motion for a mistrial, his claim is without merit. As stated above, a mistrial is only required "when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." Here, the Detective made a momentary reference to an out-of-court statement on a 9-1-1 tape to explain his course of conduct, that is, why the police searched the vehicle at the scene of the shooting in which evidence was recovered that tended to prove that [Soto] was in the area at the time of the shooting. An out-of-court statement offered not for its truth, but rather to explain the course-of-conduct of police, is admissible, particularly where, as here, the defense had attacked the adequacy of the police investigation. ***See Commonwealth v. Chmiel***, 889 A.2d 501, 532-534 (Pa. 2005). However, under the circumstances presented, the Court deemed the potential for the jury to consider the statement for an improper purpose, that is, as proof that the shooter was seen driving a Buick, to outweigh its non-hearsay probative value. For that reason, the Court immediately not only struck the

> evidence, but explicitly admonished the jury to disregard it. Under these circumstances, the jury's brief exposure to the arguably admissible evidence could not have deprived defendant of a fair trial. No relief is due. *See* [***Commonwealth v. Manley***, 985 A.2d 256 266-67 (Pa.Super. 2009)]; [***Commonwealth v. Freeman***], 827 A.2d 385, 409 (Pa. 2003).

1925(a). Op. at 9-10 (emphasis added). Because the trial court, in fact, excluded the detective's testimony, we conclude that Soto's claim lacks merit.

Next, Soto claims that his trial counsel was ineffective on four separate bases. However, it is well-settled that "absent certain circumstances, 'claims of ineffective assistance of counsel are to be deferred to [Post Conviction Relief Act] review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.'" ***Commonwealth v. Harris***, 114 A.3d 1, 5 (Pa.Super. 2015) (quoting ***Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013)); *see also **Commonwealth v. Grant***, 813 A.2d 726, 738 (Pa. 2002) ("[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."). Accordingly, because circumstances warranting review of Soto's ineffectiveness claims on direct appeal do not exist, we dismiss Soto's ineffectiveness claims without prejudice. *See **Grant***, 813 A.2d at 739 (dismissing appellant's claims of ineffectiveness of counsel without prejudice).

Finally, we conclude that Soto has waived his weight of the evidence and sufficiency of the evidence claims because he did not raise them in his Rule 1925(b) statement. **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."). In addition, Soto did not raise his challenge to the weight of the evidence with the trial judge. **Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa.Super. 2004) ("As noted in the comment to [Pennsylvania Rule of Criminal Procedure] 607 [regarding challenges to the weight of the evidence], '[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.'") (some alterations in original)..

Even if Soto had not waived his challenge to the weight of the evidence supporting his convictions for third-degree murder and aggravated assault, this challenge is meritless. This Court reviews a weight of the evidence claim for an abuse of discretion. **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence . . . ." **Id.** (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000)). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial

court's determination that the verdict is against the weight of the evidence."
*Id.* (quoting *Widmer*, 744 A.2d at 753).

In the *Anders* brief, counsel offers two bases for challenging the weight of the evidence: 1) that the "eyewitnesses were not in a good position to make an identification" or "were so overcome with fear as to be incapable of making an accurate identification"; and 2) that the witnesses who identified Soto made an excessive amount of inconsistent statements. *Anders* Br. at 24. However, as the fact-finder, the jury was free to credit the witnesses' testimony as they saw fit. *See Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) (quoting *Commonwealth v. Price*, 616 A.2d 681, 685 (Pa.Super. 1992)) ("A determination of credibility lies solely within the province of the factfinder."); *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa.Super. 2004) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses.").

Further, even if Soto had not waived his challenge to the sufficiency of the evidence supporting his convictions for third-degree murder and aggravated assault, we would find it meritless. We apply the following standard when reviewing a sufficiency of the evidence claim:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

- 14 -

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super. 2003) (quoting

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001)).

This Court has previously discussed the elements of third-degree murder:

> The elements of third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder. Malice is the essential element of third degree murder and is the distinguishing factor between murder and manslaughter. The Pennsylvania Supreme Court has defined malice in the following terms:
>
> > "The distinguishing criterion of murder is malice aforethought. But it is not malice in its ordinary understanding alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed,

- 15 -

> but where the state or frame of mind termed malice, in its legal sense, prevailed."
>
> ***Commonwealth v. Thomas***, 527 Pa. 511, 514, 594 A.2d 300, 301 (1991), quoting ***Commonwealth v. Drum***, 58 Pa. 9, 15 (1868). Accordingly, it has been observed that malice may be found where the actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm. Malice may be inferred from the attending circumstances of the act resulting in the death. Malice is properly implied when a deadly weapon is directed to a vital part of the [victim's] body. Indeed, the inference from the use of a deadly weapon upon a vital part of the body *alone* is sufficient to establish malice.

***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 539-40 (Pa.Super. 1995) (some internal quotations omitted) (alterations and emphasis in original).

The evidence shows that Soto intentionally drew a firearm and began shooting into a large crowd of people, killing one person and injuring three others. His actions demonstrate a disregard for the unjustified and extremely high risk that those actions might cause death or serious bodily harm, thereby satisfying the requirement of malice. Thus, the evidence was sufficient to support his conviction for third-degree murder.

We next turn to Soto's challenge to the sufficiency of the evidence supporting his convictions for aggravated assault – causing serious bodily injury. This Court has stated:

> Under the Crimes Code, a person may be convicted of aggravated assault, . . . if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human

- 16 -

life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is further defined by the Crimes Code as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa.Super. 2007). Here, the evidence shows that Soto shot Jose Torres once in the right groin and once in the left buttocks, Carl Walden once in the right femur, and Larry Robinson once in the stomach. Because these are all serious bodily injuries, we conclude the evidence was sufficient to support Soto's aggravated assault convictions.

Judgment of sentence affirmed. Ineffective assistance of counsel claims dismissed without prejudice. Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2017

- 17 -