594 A.2d 300

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jeffrow THOMAS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 4, 1991.
Decided July 15, 1991.

Michele S. Dawson, Pittsburgh, Pa., for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal Alexander Mericli, Asst. Dist. Atty., Pittsburgh, Pa., for appellee.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Jeffrow Thomas, challenges the sufficiency of the evidence to support his conviction of third degree murder, when death was caused by a single bare-fisted blow to the decedent's face.

On June 23, 1978, Joe Humphrey, the victim, was eating and drinking with appellant, appellant's two brothers, and four or five other people in the kitchen of a friend for a period of several hours in the afternoon. Humphrey, forty years old, six feet, one inch tall, weighing 175 pounds, had, years earlier, suffered an injury to his neck when he was struck in the back of the neck with a pool cue. In 1972, six years before the fatal assault, the neck injury had required surgery and a cervical fusion had been performed. The result was a chronically stiff neck which made it difficult for him to turn his head. The condition was readily apparent and was a topic of conversation at the gathering on June 23, 1978.

Humphrey left the residence at approximately 6:00 P.M. to purchase more wine, and returned a little later. At that time, appellant and his two brothers were outside the resi-

dence and met Humphrey on the pavement. One of appellant's brothers took Humphrey's bottle of wine and Humphrey began to object. While Humphrey turned his head, with difficulty, to face appellant's brother, appellant, who was twenty years old, six feet tall, weighing 180 pounds, struck him in the face with his fist. The blow knocked Humphrey down, causing him to strike his head on the concrete pavement, knocking him unconscious. Without regaining consciousness, Humphrey died a week later of a brain hemorrhage caused by the fall.

Appellant was charged with first degree murder, third degree murder, and voluntary manslaughter. At the conclusion of the Commonwealth's case, the trial court dismissed the charges of first degree murder and voluntary manslaughter. Appellant elected to waive jury instructions on involuntary manslaughter, choosing to present the jury with only two options: third degree murder or an acquittal. He was convicted of third degree murder and sentenced to a term of three to twenty years imprisonment.

Trial counsel neglected to appeal and a PCHA proceeding in 1986 reinstated appellant's right to appeal. Appellant challenged the weight and sufficiency of the evidence as well as trial counsel's effectiveness in waiving jury instructions on involuntary manslaughter. The trial court and the Superior Court rejected appellant's arguments and denied his motion for new trial. Due to our view of the sufficiency of the evidence, we need not address the remaining issues raised by appellant.

■ The narrow issue presented by this case is whether proof of appellant's single punch to Joe Humphrey's face was sufficient to support a finding of malice, an element of the crime of murder of the third degree. *Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981). In reviewing sufficiency of the evidence, we ask "whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the

offense(s) beyond a reasonable doubt." *Commonwealth v. Bricker*, 525 Pa. 362, 364, 581 A.2d 147, 148 (1990).

Malice was defined in *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868), as follows:

> The distinguishing criterion of murder is malice afore-thought. But it is not malice in its ordinary under-standing alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It compre-hends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regard-less of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

The crime of third degree murder under the Crimes Code incorporates the common law definition of malice. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 556, 388 A.2d 1068, 1070, *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). The question is whether the evidence in this case supports a finding of wickedness of disposition, hard-ness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty sufficient to constitute legal malice.

The Commonwealth concedes that a single blow, without a weapon, is, ordinarily, not sufficient to establish malice. *Commonwealth v. Moore*, 488 Pa. 361, 412 A.2d 549 (1980); *Commonwealth v. Buzard*, 365 Pa. 511, 76 A.2d 394 (1950); *Commonwealth v. Dorazio*, 365 Pa. 291, 74 A.2d 125 (1950). Moreover, malice may not be inferred simply from the fact that a person "performed a certain act and that act brought about the death of another." *Commonwealth v. Reilly*, 519 Pa. 550, 568, 549 A.2d 503, 512 (1988). The Commonwealth would distinguish this case, however, by focusing on the victim's infirmity, a stiff neck, the unexpectedness of appellant's assault, delivered from

the victim's "blind side" as he faced toward appellant's brother, and the fact that the victim was intoxicated.

Three of the cases cited above are particularly instructive because they involved homicides resulting from beatings administered without weapons other than hands and feet. *See Moore, Buzard,* and *Dorazio, supra.* They all recited the principle that, although malice is not ordinarily evident under such circumstances, when a homicide results from a beating without weapons, the presence of malice is a question to be determined by examining all the circumstances of the assault.

In each of the three cases, this Court determined that the circumstances supported a finding of malice. In *Moore,* the defendant was eight inches taller and twenty pounds heavier than the victim. The victim suffered extensive surface injuries on the right side of his face and head, internal head injuries, numerous fractures of the ribs and hemorrhaging in the area of the kidney and spleen, resulting from "a severe beating" administered "even after the victim was rendered helpless." 488 Pa. at 364–65, 412 A.2d at 551. This Court referred to the "size of the assailant, the manner in which the fists are used, the ferocity of the attack and its duration and the provocation" as being relevant to the question of malice. *Id.,* 488 Pa. at 363, 412 A.2d at 551.

In *Buzard,* after stating that fists alone, "though not ordinarily a deadly weapon may become deadly by repeated and continued blows applied to vital and delicate parts of the body of the defenseless, unresisting victim," 365 Pa. at 516, 76 A.2d at 396, held that there was abundant evidence of the defendant's depravity and hardness of heart, recklessness of consequences and a mind which disclosed malice. *Id.* The evidence established that the defendant, eight inches taller and forty-five pounds heavier than the victim, had pursued the victim from behind, grabbed him by the neck, forced him to the ground, sat astride him, and beat him repeatedly on both sides of the face and head with both hands, continuing even after bystanders had told him to

stop, and finally kicked the prone victim. *Id.* at 513–15, 76 A.2d at 395–96.

*Dorazio* involved a former professional prize fighter who had been a contender for the heavyweight championship of the world eight years prior to the homicide when he was defeated by the then champion, Joe Louis. The homicide occurred in 1949 in the context of a labor union dispute in which the defendant had made threats against the rival union to which the victim belonged, promising to "send [them] home in an ambulance." 365 Pa. at 293, 74 A.2d at 126. The defendant pursued the victim down a street, into a building, up a flight of stairs, into a corridor where the victim fell, then stood over him and struck him repeatedly— at least ten to fifteen times—until and after the victim begged him to stop. The result was a massive brain hemorrhage accompanying a widespread skull fracture. *Id.*, 365 Pa. at 293–94, 74 A.2d at 126–27. This Court held that the defendant's "unjustified, unprovoked, brutal and persistent attack upon the deceased" was sufficient to establish malice, "equivalent in legal character to a criminal purpose aimed against life." *Id.*, 365 Pa. at 299–302, 74 A.2d at 129–30.

The evidence against appellant in this case falls so far short of the examples in *Moore, Buzard,* and *Dorazio, supra,* that it cannot suffice to establish the presence of legal malice. The parties were approximately equal in size. They had been drinking together for hours. Most important, the injury was the tragic but improbable result of *a single blow.* This simply does not warrant the inference of legal malice which was justified in *Moore, Buzard,* and *Dorazio, supra,* by brutal, prolonged, persistent, ferocious assaults carried out by larger, more powerful assailants. Although appellant's punch knocked Joe Humphrey down and thus set in motion the chain of events resulting in Humphrey's death, the evidence established that Humphrey's fatal injury occurred when his head struck the pavement; there was no testimony that appellant's blow was a powerful one, merely that it was unexpectedly delivered to a man with a stiff neck. Despite the victim's

unfortunate infirmity, there is nothing in this record which will support an inference of depravity and hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty equivalent to a criminal purpose aimed against life, all of which are necessary to support a verdict of murder of the third degree. Accordingly, the judgment of sentence must be reversed.

Judgment of sentence reversed; case remanded for new trial.

PAPADAKOS, J., notes his dissent.