J-S13036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALEXIS HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 1481 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 30, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000302-2017

BEFORE:  STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 31, 2020**

Alexis Hernandez (Hernandez) appeals *nunc pro tunc* from the judgment of sentence imposed following his conviction by a jury in the Court of Common Pleas of Lebanon County (trial court) of one count each of attempted homicide, person not to possess a firearm, recklessly endangering another person, and two counts of aggravated assault.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2501(a), 6105(a)(1), 2705, 2702(a)(1) and 2702(a)(4), respectively.

**I.**

This case arises from shootings that occurred in the late night hours on New Year's Eve, December 31, 2016, involving Hernandez, an unidentified companion, and the victims, Adrian Rodriguez (Rodriguez) and Larry McSwain (McSwain). Just before midnight, Rodriguez and McSwain, who were friends from their time together in the United States Marine Corps,[2] went to the Silver Dollar Bar and drank two beers each. They then went to a nearby house party with a few women they had met, where Rodriguez took two hits of a marijuana cigarette. Rodriguez and McSwain were uncomfortable with the drug use at the party and they left with an unidentified female.

As they were walking towards Rodriguez's home they were approached by two men they had never met before, who crossed the street to get in front of them. The men, Hernandez and his companion, aggressively and repeatedly asked Rodriguez "you all right?" (N.T. Trial, 3/20/18, at 23). Rodriguez noticed that Hernandez was holding a pistol in his right hand, pointed downward. Rodriguez, afraid he would be shot, grabbed Hernandez's right forearm and directed the barrel of the gun towards the ground. During the struggle, Hernandez's companion punched the left side of Rodriguez's face and pulled out tufts of his hair. McSwain was able to take the pistol from

---

[2] McSwain lived in Washington D.C. and was planning to move to Lebanon County at the time; he instead moved to Chicago, Illinois.

Hernandez. He told the men that the confrontation was over and to walk away.

As Rodriguez and McSwain attempted to retreat backwards, Hernandez covered his hand with a cloth, began yelling that he had another gun and directed McSwain to put the pistol down. McSwain put the pistol down and began to run away and Hernandez picked up the gun. Rodriguez continued to walk near the men as they "fiddled with the gun to clear it" and told McSwain that he would not run "because they're cowards." (*Id.* at 32). Hernandez replied "What the fuck you said, motherfucker?" and shot at Rodriguez twice. (*Id.*). Hernandez fired three additional shots at Rodriguez and McSwain as they ran away; neither man was struck by a bullet.

Lebanon City Police Officers responded to the scene and Rodriguez provided them with a description of the shooter as a thin Hispanic male with two cornrow braids, wearing all white (shirt, jacket, pants, shoes). Police observed no signs of intoxication in Rodriguez's demeanor. Detective William Walton obtained video footage capturing some of the incident from three cameras in the area, showing the shooter dressed in all white with braids. In order to identify the shooter, the detective accessed a fictitious Facebook account used by police for investigation and searched New Year's Eve posts by individuals believed to be involved in criminal activity. Detective Walton located a post with a photograph matching the description Rodriguez provided of the shooter, confirmed by the video footage. The detective put Hernandez's

- 3 -

picture into a photographic lineup from which Rodriguez immediately identified Hernandez as the shooter.

Hernandez was arrested and he agreed to speak to Detective Walton after he was "*Mirandized*." Hernandez initially indicated that he did not remember much from New Year's Eve because he had been drinking and was extremely intoxicated. He then flat out denied any involvement in the incident. He did admit that he was wearing all white that night.

Police Officer James Groy interviewed McSwain at the scene of the incident about the altercation. However, Detective Walton was never able to make contact with McSwain. The Commonwealth issued a subpoena for him to appear at trial and made all travel arrangements on his behalf. It also asked for special scheduling of the trial to accommodate his travel. When McSwain failed to appear, Hernandez asked the trial court to issue a "missing witness" jury instruction. The court declined the request because Hernandez could have also taken appropriate measures to ensure McSwain's appearance.

The jury found Hernandez guilty of the above-listed offenses on March 20, 2018. On May 30, 2018, the trial court sentenced Hernandez to an aggregate term of not less than seventeen and one-half nor more than thirty-five years' incarceration. After this Court quashed Hernandez's initial direct appeal, the trial court reinstated his direct appeal rights *nunc pro tunc* on August 22, 2019. This timely appeal followed. Hernandez and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

**II.**

Hernandez raises three issues on appeal, contending that the trial court erred in declining to give the "missing witness" jury instruction at trial, as well as challenging both the sufficiency and weight of the evidence. (*See* Hernandez's Brief, at 4). We begin by addressing Hernandez's claim concerning the lack of a "missing witness" jury instruction.

**A.**

As previously mentioned, Hernandez asked the trial court to issue a missing witness jury instruction based on McSwain's failure to testify for the Commonwealth at trial. Hernandez argues he was prejudiced because the jury was not given the option to draw an unfavorable inference against the Commonwealth for McSwain's failure to appear because he was an alleged victim and would have been subject to cross-examination.[3]

_____

[3] In cases where a trial court denies a defendant's request for a specific charge, our review is guided by the following principles:

> In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations. Moreover,

> it is well-settled that the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties, and its refusal to

The missing witness instruction directs the jury that it may draw an inference that an uncalled witness's testimony would have been unfavorable to the party that does not produce that witness, in certain limited circumstances. *See Commonwealth v. Miller*, 172 A.3d 632, 645–46 (Pa. Super. 2017). Specifically, the witness must be available to only one of the parties to a trial; appear to have special information material to the issue; and have testimony that would not merely be cumulative. *See id.* However, a party is not entitled to this instruction if the uncalled witness is equally available to both parties; there is a satisfactory explanation as to why the party failed to call the witness; and the witness is not available or not within the control of the party against whom the negative inference is desired. *See id.*

In this case, at trial, the Commonwealth explained:

> Mr. McSwain chose to not get on the train. He's not coming. . . . [H]e chose not to get on the train. We paid for the ticket. We paid for the hotel. We paid for everything, but he's not coming.

> \* \* \*

> I did everything I could to get [McSwain] here. I can't physically take somebody's body and put them on a train in a

---

give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Soto*, 202 A.3d 80, 98–99 (Pa. Super. 2018), *appeal denied*, 207 A.3d 291 (Pa. 2019) (citation omitted).

timely fashion. We prepaid the [train] ticket. We prepaid the hotel. I took every effort I could possibly take.

And [McSwain's] address was provided to Defense counsel. So this is not someone only available to myself. I highly doubt Defense went through the Out-Of-State Material Witness subpoena process himself.

(N.T. Trial, 3/20/18, at 139, 316-317).

Following our review, we discern no merit to Hernandez's contention that he was entitled to the missing witness jury instruction. We agree with the trial court's conclusion that the defense could have taken steps to ensure McSwain's appearance. Furthermore, the record plainly reflects McSwain was not within the Commonwealth's control when he refused to appear despite its subpoena, travel arrangements and scheduling accommodations made for him. As a result, Hernandez has not demonstrated reversible error with respect to the trial court's ruling on the jury instruction.

**B.**

We next address Hernandez's claim that the evidence was insufficient to support his conviction in which he disputes the element of intent.[4]

---

[4] Hernandez's argument conflates weight and sufficiency, which are distinct claims. To the extent the premise of his sufficiency argument is that Rodriguez's statements are inconsistent and his testimony not credible, this relates to the weight, not the sufficiency of the evidence. *See* ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence). In contrast, a sufficiency claim must specify "the **element or elements** upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Ellison***, 213 A.3d 312, 320 (Pa. Super.

Hernandez asserts that police arrested him based upon the statements of Rodriguez, which were inconsistent; and that its investigation was not thorough enough to determine whether Hernandez was, in fact, the shooter. He further maintains that the Commonwealth failed to establish any motive for the shooting. He argues that the lack of motive, in conjunction with Rodriguez's inconsistent statements, negate the element of intent for the attempted homicide and aggravated assault offenses. (*See* Hernandez's Brief, at 26-36).

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.
>
> In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

---

2019), *appeal denied*, 220 A.3d 531 (Pa. 2019) (citation omitted; emphasis added). Although Hernandez improperly conflates the two claims at various points, we will address them to the extent he has properly developed separate arguments for each claim. Although he makes general statements challenging all counts, the only element he clearly specifies is the intent *men rea* for attempted murder and aggravated assault.

- 8 -

*Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019) (citations omitted).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

> A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act. *See* 18 Pa.C.S. §§ 901, 2502. The substantial step test broadens the scope of attempted liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime. **The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence**. [T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts.

*Commonwealth v. Ligon*, 206 A.3d 515, 519 (Pa. Super. 2019) (emphasis added).

"Likewise, the intent necessary to establish the offense of attempted murder—specific intent to kill—is greater than and necessarily includes the intentional, knowing, or reckless infliction of serious bodily injury, the intent required for aggravated assault." *Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994). "[O]ne cannot kill without inflicting serious bodily injury. 18 Pa.C.S. § 2301." *Id.*

We first note our disagreement with Hernandez's premise that the Commonwealth was required to establish his motive for the shooting. Although the Commonwealth was required to prove Hernandez's specific

- 9 -

intent to kill, it was not required to show motive. *See Commonwealth v. Shain*, 426 A.2d 589, 591 (Pa. 1981) ("In establishing an accused's guilt in a homicide case, the prosecutor is not required to show motive.") (citation omitted).

With regard to demonstrating Hernandez's intent to kill, Rodriguez described the shooting as follows:

Q. [I]n terms of the first shot, how close was the shooter to you?

A. He would have been within like 15 to 20 feet.

Q. And pointed in the air, at the ground, or directly at your body?

A. No, he pointed the gun at me.

Q. And at that point you started to run?

A. Yeah.

Q. In terms of the next shot, again pointed at the air, at the ground, or directly at you?

A. The first two are the ones I really saw, which is when he was still in front of me and I saw the muzzle flash. I saw them. [Hernandez said:] "What the fuck you said, motherfucker," and then that's when I started running. Then the second one, I mean, I saw the flash from my peripheral, but I can't say if he was like actually pointing straight at me. I was kind of running so I didn't see that.

Q. But you know for sure there were two shots when he was pointing it directly at you?

A. Yeah.

(N.T. Trial, 3/20/18, at 34). Rodriguez further testified that every time he saw Hernandez fire the gun, he did not point it towards the air or ground; Hernandez pointed it "directly" at him. (*Id.* at 69).

Thus, viewing the record in a light most favorable to the Commonwealth as the verdict winner, there was ample basis for the jury to conclude that Hernandez intended to kill Rodriguez. The evidence reflects that Hernandez pointed his loaded gun directly at Rodriguez within close range, that he shot at Rodriguez twice while they were in close proximity to one another, and that he continued to shoot at Rodriguez, who was unarmed, as Rodriguez attempted to flee.[5]

With regard to Hernandez's claim concerning the purportedly deficient police investigation rendering the evidence insufficient, we agree with the trial court that,

> Contrary to [Hernandez's] argument, we believe the Commonwealth provided ample evidence of [Hernandez's] identity for the jury to find that [he] was the shooter. At trial,

---

[5] We note that we are not legally persuaded by Hernandez's contention that this case is analogous to **Commonwealth v. Thomas**, 594 A.2d 300 (Pa. 1991). (**See** Hernandez's Brief, at 27). In **Thomas**, "the narrow issue presented [was] whether proof of appellant's single punch to [the victim's] face was sufficient to support a finding of malice, an element of the crime of murder of the third degree." **Id.** at 303. The Commonwealth conceded that a single blow, without a weapon, is, ordinarily, not sufficient to establish malice. **Id.** at 302. Our Supreme Court reversed the judgment of sentence because there was "no testimony that appellant's [single] blow was a powerful one, merely that it was unexpectedly delivered to a man with a stiff neck." **Id.** Not only are the factual circumstances in **Thomas** inapposite to those here, there was a weapon which Hernandez used to repeatedly fire at unarmed, fleeing victims.

- 11 -

Rodriguez gave a detailed physical description of the shooter, including his hair, clothing and ethnicity. He had given a detailed description to the police, indicating [Hernandez's] height, build, age, clothing and hairstyle, by which Detective Walton was able to find Facebook pictures of a male fitting that description by looking at posts of individuals known to be involved in criminal activity, giving close attention to those posted on December 31, 2016. He emailed other police officers to obtain [Hernandez's] name. In surveillance footage of the incident, [Hernandez's] braid could been seen swinging when he turned his head. The videos also showed a logo on [Hernandez's] shirt, just like the shirt worn by [Hernandez] in the Facebook pictures from that evening.

(Trial Court Opinion, 10/10/18, at 9-10). Based on the foregoing, Hernandez's sufficiency claim merits no relief.

## C.

In his final issue, Hernandez challenges the weight of the evidence supporting his conviction. Hernandez reiterates his arguments that there was a complete lack of a full and proper police investigation; that Rodriguez made inconsistent statements regarding the number of shots fired at him and the distance between himself and the shooter; and that there was no motive established for the shooting. (*See* Hernandez's Brief, at 36-41).

We begin by noting:

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, [i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Mikitiuk***, 213 A.3d 290, 305–06 (Pa. Super. 2019) (citations omitted). Additionally, it is well-settled that this Court is precluded from reweighing the evidence and substituting our credibility determinations for that of the fact-finder. ***See Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014).

As the trial court aptly assessed:

[Hernandez] argues that the verdicts were against the weight of the evidence due to a lack of a full and proper investigation by police, inconsistent statements made by Rodriguez, and the lack of an apparent motive for [Hernandez] to commit these crimes. However . . . we find that the police conducted a thorough investigation in identifying [Hernandez] as the perpetrator of these crimes. Any alleged inconsistencies in Rodriguez's description of [Hernandez] and/or the sequence of events and details of the incident were explained at trial. [Defense counsel] questioned the police officers regarding Rodriguez's demeanor at the scene and none of the officers found Rodriguez unable to provide a thorough accounting at that time. There was no requirement that the Commonwealth provide evidence of any specific motive on the part of [Hernandez]. The jury obviously found the testimony of the Commonwealth's witnesses to be credible and disregarded the testimony of [the defense witnesses] as incredible. Upon review of the evidence, we find nothing to shock our conscience and we will not disturb the jury's determination.

(Trial Ct. Op., at 21-22).

After review of the record, we agree with the trial court's sound rationale and find that Hernandez is not entitled to relief on his weight of the evidence claim. Hernandez requests that we re-weigh the evidence and reassess the

credibility of Rodriguez, a task that is beyond our scope of review.  The jury, as finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial.  Hernandez's final issue merits no relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/31/2020