J-S44005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW KANE PERKINS | : | |
| | : | |
| Appellant | : | No. 442 MDA 2020 |

Appeal from the Judgment of Sentence Entered February 22, 2013
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003892-2011

BEFORE: BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 02, 2020**

Appellant, Matthew Kane Perkins, appeals *nunc pro tunc* from the aggregate judgment of sentence of 20 to 40 years' incarceration, followed by 20 years' probation, imposed after a jury convicted him of two counts of third-degree murder, three counts of aggravated assault, possession of a firearm by a person prohibited, possession of a firearm by a minor, possessing an instrument of crime, and recklessly endangering another person.[1] On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain his convictions, as well as the discretionary aspects of his sentence. After careful review, we affirm.

---

[1] 18 Pa.C.S. §§ 2502(c), 2702(a)(1), 6105(a)(1), 6110.1(a), 907(a), and 2705, respectively.

The trial court summarized the facts underlying Appellant's convictions, as follows:

The incident which gave rise to Appellant's conviction[s] occurred sometime between the late night of July 29, 2011[,] to the early morning of July 30, 2011. On that date, a party was being held in a garage that was located at Green and 11th Street, Reading, Berks County. ***See*** Notes of Testimony, Jury Trial, 1/30/13, 1/31/13, 2/1/13, at 35. (hereinafter N.T.[] Jury Trial). Between twenty-five to fifty Hispanic people were present at the party, [as well as] Appellant, who is African American. At some point, the party ended for an unknown reason, and people started to leave. ***Id.*** at 37. However, after people started to leave the party, a confrontation occurred between a group that included some people who were at the party, including Juan Carlos Pimental, Ceasor Rivera,[2] and Tyre Little, and a group of four or five African Americans, including Appellant, near an unnamed alleyway between Heckmans Court and Mulberry Street. ***Id.*** at 219, 256-57. A gun was visible [i]n Appellant's pants. ***Id.*** at 221. Appellant stated that he did not want any trouble, and Rivera approached Appellant and reached for Appellant's gun. ***Id.*** at 214, 218. At this point, the other African Americans started to attack Rivera. ***Id.*** at 219. Rivera was able to break free and continued to fight[,] aided by Pimental and a number of other people. ***Id.*** at 222, 258. At some point, Appellant was knocked down, and when he stood up, he pulled out the gun he was carrying and told everyone not to move while waving the gun in front of him. ***Id.*** at 223. He then tried to leave through the alleyway towards Mulberry Street. ***Id.*** at 224. He was followed by those who were involved in the fight, including Pimental and Rivera. ***Id.*** at 237.

In the alleyway, Appellant fired several shots. ***Id.*** at 43-44. One shot struck Pimental in the neck. ***Id.*** at 126. Appellant then started to run towards Mulberry Street. Rivera and about five other people pursued Appellant. While fleeing, Appellant, without looking back, continued to fire several shots behind him. ***Id.*** at 45-47. Five shots struck Rivera, one of which struck him in the chest. ***Id.*** at 305. Little, who attempted to flee after shots were fired, was also shot in the leg. ***Id.*** at 262-63[]. During this

_____

2 We note that the transcript uses the spelling "Cesar" rather than "Ceasor."

confrontation, no one else present had a gun, however, a knife blade and a knife handle were later located in the alleyway. ***Id.*** at 264, 391-92.

Rivera died that night as a result of the wound to his chest. ***Id.*** at 308. Pimental was transported to Reading Hospital and was intubated. ***Id.*** at 126. Until the time of his death six months later, Pimental was on a ventilator and quadriplegic. ***Id.*** Pimental's cause of death was due to the injuries he sustained. ***Id.*** at 130. Little had trouble walking for a few days, but fully recovered and has no present medical issues. ***Id.*** at 263.

A short time after the incident, Appellant called and spoke to Brina Mayton over the phone. Mayton knew Appellant because her sister was in a relationship with one of Appellant's brothers. ***Id.*** at 324. Mayton asked Appellant about what had happened that night, and Appellant stated that one of his boys was in trouble and that he went to protect him then ran. ***Id.*** at 327. Appellant admitted over the phone that he shot someone, but said the person had pulled out a knife. ***Id.*** at 334. After the incident, Appellant fled to Florida, where he was later arrested and extradited to Pennsylvania.

Trial Court Opinion (TCO), 5/21/20, at 3-4.

Based on this evidence, the jury convicted Appellant of the above-stated charges. On February 21, 2013, he was sentenced to an aggregate term of 20 to 40 years' incarceration, followed by 20 years' probation. He did not file a post-sentence motion or a direct appeal. However, on March 6, 2014, Appellant filed a timely petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking the restoration of his post-sentence motion and appeal rights. After delays caused by changes in Appellant's counsel, the court granted Appellant's petition on November 18, 2019. Appellant filed a

post-sentence motion on December 2, 2019.[3] After a hearing, the court denied Appellant's post-sentence motion on February 4, 2020. He filed a *nunc pro tunc* notice of appeal on March 4, 2020,[4] and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on May 21, 2020.

Herein, Appellant presents three issues for our review:

_____

[3] Appellant's motion was not filed within 10 days of the court's order granting his petition. In the motion, Appellant's counsel explained that it was untimely because he had not received the court's November 18, 2019 order until Friday, November 29, 2019, which was a court holiday, making the next possible filing date Monday, December 2, 2019. *See Nunc Pro Tunc* Post-Sentence Motion, 12/2/19, at 1 (unnumbered); *see also* 1 Pa.C.S. § 1908 ("When any period of time is referred to in any statute, such period in all cases … shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on a Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."). Appellant's counsel expressly requested that the "[c]ourt grant [Appellant] a *[n]unc [p]ro [t]unc* filing on []his post-sentence motion…." *Nunc Pro Tunc* Post-Sentence Motion at 2 (unnumbered). On December 5, 2019, the court issued an order scheduling a hearing for February 4, 2020, thus expressly permitting the filing of Appellant's post-sentence motion *nunc pro tunc* and tolling the 30-day appeal period. *See Commonwealth v. Capaldi*, 112 A.3d 1242, 1244 (Pa. Super. 2015) (stating that a defendant's untimely post-sentence motion may toll the appeal period where he explains the untimeliness and requests that the trial court accept his motion *nunc pro tunc*, and the court expressly permits the filing of the motion *nunc pro tunc*).

[4] We observe that Appellant's notice of appeal incorrectly stated that he was appealing from the February 4, 2020 order denying his post-sentence motion. Because an appeal properly lies from the judgment of sentence, we have corrected the caption accordingly. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super 2001) (*en banc*).

1. Whether the evidence was insufficient to find [Appellant] guilty of murder of the third degree, aggravated assault, possession of a firearm by a minor, and possession of instruments of crime?

2. Whether the verdicts of guilty of murder of the third degree[,] aggravated assault, possession of a firearm by a minor, and possession of instruments of crime were against the weight of the evidence?

3. Did the trial court abuse its discretion in imposing sentence, in light of the imposition of a maximum sentence, as it is manifestly excessive so as to inflict to[o] severe a punishment on [Appellant] and was not warranted under the circumstances of the within case or the factors enumerated in the Sentencing Code[,] which did not militate in favor of total confinement of the length imposed in this case[,] by failing to give proper consideration [to] any rehabilitative incentive on behalf of [Appellant] and the mitigating factors presented at sentencing[,] and focusing only on the punitive needs of the Commonwealth to the exclusion of all others[?]

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant first challenges the sufficiency of the evidence to sustain his convictions.

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant first contends, generally, that none of his convictions can stand because "the Commonwealth had no real, direct evidence that

- 5 -

[Appellant] was the shooter. None of the eyewitnesses to the crimes that the Commonwealth called to the witness stand ever identified [Appellant] as the person who shot a gun." Appellant's Brief at 14-15.

Appellant's argument is belied by the record. For instance, Daniel DeLaRosa testified that he was at the party on the night of July 30, 2011, and he witnessed the shooting afterwards from a distance of approximately 30 feet. N.T. Jury Trial at 35-36, 40. He stated that he was able to see the shooter, whom he recognized from school. DeLaRosa then identified Appellant in court as the person he saw shooting that night. *Id.* at 44. Additionally, Brina Mayton testified that Appellant admitted to her that he had shot someone on the night of the party. *Id.* at 327. This evidence was sufficient for the jury to find, beyond a reasonable doubt, that Appellant was the individual that shot the victims in this case.

Appellant also challenges the sufficiency of the evidence to sustain his conviction of third-degree murder, claiming that the Commonwealth failed to prove that he acted with malice. According to Appellant, the evidence demonstrated that he fired the shots to stop the fight, and he did so as he ran away from the crowd that was "surg[ing] after him." Appellant's Brief at 17. Appellant also maintains that the evidence did not prove that he intentionally shot Little so as to support his conviction of aggravated assault.

Appellant's arguments are unconvincing. Our Supreme Court has explained:

Pennsylvania retains the common law definition of murder, which is a killing conducted "with malice aforethought." *Commonwealth v. Santos*, … 876 A.2d 360, 363 ([Pa.] 2005); *Commonwealth v. Thomas*, … 594 A.2d 300, 301 ([Pa.] 1991). Section 2502 of the Pennsylvania Crimes Code categorizes murder into degrees. *See generally* 18 Pa.C.S. § 2502(a)-(c). Third-degree murder is defined as "all other kinds of murder," *i.e.*, those committed with malice that are not intentional (first-degree) or committed during the perpetration of a felony (second-degree). *Id.* The pertinent provision of the aggravated assault statute requires proof that the defendant "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). … [T]he *mens rea* required for a conviction of aggravated assault, like third-degree murder, is malice; only the result of the crimes differ. *See Commonwealth v. O'Hanlon*, … 653 A.2d 616, 618 ([Pa.] 1995) ("Aggravated assault is, indeed, the functional equivalent of a murder in which, for some reason, death fails to occur.")….

The overarching definition of malice was first provided by this Court in *Commonwealth v. Drum*, 58 Pa. 9 (1868):

> [I]t is not malice in its ordinary understanding alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Id.* at 15. This definition has been continuously repeated and relied upon in decisions by this Court, *see, e.g., Commonwealth v. Fisher*, … 80 A.3d 1186, 1191 ([Pa.] 2013); *Santos*, 876 A.2d at 363; *Thomas*, 594 A.2d at 301; *Commonwealth v. McGuire*, … 409 A.2d 313, 316 ([Pa.] 1979), and is incorporated into the Pennsylvania Suggested Standard Criminal Jury Instructions for third-degree murder. Pa. SSJI (Crim) § 15.2502C (2016).

While *Drum*'s definition of malice lacks finite parameters, for the purpose of third-degree murder or aggravated assault, "our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless

displayed a conscious disregard for 'an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" ***Santos***, 876 A.2d at 364 (quoting ***Commonwealth v. Young***, … 431 A.2d 230, 232 ([Pa.] 1981)).

***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017).

In this case, the trial court relied on ***Packer*** to conclude that malice was established, reasoning as follows:

> In this case, the evidence examined in a light most favorable to the Commonwealth reveals that Appellant fired multiple shots into a crowd of people while attempting to flee. One of these struck Pimental in the neck and another struck Rivera in the chest, resulting in their deaths. Our Supreme Court has stated that the reckless firing of a gun into a crowd of people is evidence that the shooter acted with malice. [***Packer***, 168 A.3d at 169]. Therefore, there was sufficient evidence for the jury to conclude that Appellant acted with malice and to find Appellant guilty of third[-]degree murder.

TCO at 7.

We agree with the trial court that Appellant's act of firing a gun into the crowd of people in the alleyway was sufficient to demonstrate the malice element of third-degree murder. ***See Packer***, 168 A.3d at 169 ("The quintessential example of the level of recklessness required to constitute malice is a defendant who shoots a gun into a crowd. If a man fires a gun into a crowd and kills another it is murder, because the fact of the reckless shooting of a gun into a crowd is malice in law. That wicked and depraved disposition and that recklessness and disregard of human life is malice.") (citation and internal quotation marks omitted). The fact that the crowd was fighting, and that several people were chasing Appellant, does not change our decision. Initially, Appellant fails to point to any evidence indicating that he

- 8 -

could not have retreated when the fight first started. Once Appellant did begin to flee, there is no evidence that he could not have continued to run and made it to safety without firing his weapon. Instead, Appellant chose to shoot "with his hand behind" him as he ran, and was "looking over his right shoulder" towards Cesar as he fired. N.T. Jury Trial at 45, 46. Notably, multiple eyewitnesses testified that no one, including Cesar, had a gun. *See id.* at 48-49, 50, 52, 221, 264. We agree with the trial court that this evidence, viewed in the light most favorable to the Commonwealth, was sufficient for the jury to find that Appellant acted with malice in shooting and killing Pimental and Cesar, and injuring Little. Therefore, his convictions for third-degree murder and aggravated assault must stand.

In Appellant's next issue, he challenges the weight of the evidence to support the jury's verdict.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Presently, Appellant solely argues that the verdict was against the weight of the evidence because "it was based on speculation as to who actually fired [the] shots and who actually possessed the gun." Appellant's Brief at 18. For the reasons set forth in our discussion of Appellant's sufficiency claim, we disagree. Several witnesses identified Appellant as the shooter, and testified that he was the only individual who had a gun that night. Accordingly, his cursory weight-of-the-evidence argument is meritless.

In Appellant's third and final issue, he challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question

- 10 -

exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

In this case, Appellant timely filed his *nunc pro tunc* appeal, and he has included a Rule 2119(f) statement in his appellate brief. Therein, he claims that the court's sentence of 20 to 40 years' imprisonment, followed by 20 years' probation, is "manifestly excessive, clearly unreasonable, and contrary to the fundamental norms underlying the Sentencing Code." Appellant's Brief at 10. Specifically, he contends that the court only gave "limited consideration [to] the statutory factors" set forth in 42 Pa.C.S. § 9721(b), and it "failed to offer reasons for its sentence that comport with the considerations required under [s]ection 9721(b)." *Id.* at 11. We conclude that Appellant preserved these claims in his post-sentence motion, and that they present substantial questions for our review. *See Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016) (finding that a claim that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 Pa.C.S.[] § 9721(b) requires[,] presents a substantial question for our review in typical cases") (internal quotation marks and citations omitted); *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa.

Super. 2003) (declaring that a claim that the sentencing court failed to state sufficient reasons for the sentence imposed raises a substantial question).

However, in the argument section of Appellant's brief, he only baldly remarks that the court "failed to give proper consideration [to] any rehabilitative incentive on behalf of [Appellant,]" and offers no developed argument regarding this claim. Appellant's Brief at 19. He also provides no discussion of his assertion that the court did not properly consider the other section 9721(b) factors. Instead, Appellant focuses his argument on contending that the court's sentence is excessive in light of mitigating factors, such as his young age, his lack of family support, and the circumstances of his case, which indicate he was just "a fearful child who made a rash decision" after a fight broke out and individuals attacked his friends. *Id.* at 20. Based on these mitigating factors, Appellant insists that "[h]is sentence should have been in the lower end of the sentencing guidelines." *Id.*

Appellant did not argue that mitigating factors warranted a lesser sentence in his post-sentence motion, or in his Rule 2119(f) statement. Therefore, he has waived this claim. *See Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013) ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

Notwithstanding waiver, we would conclude that Appellant's sentencing challenge is meritless. We note:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. … [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169–70 (Pa. Super. 2010) (citation omitted).

In this case, the trial court explained its sentencing decision in its Rule 1925(a) opinion, as follows:

> In this case, the [c]ourt imposed sentences for Appellant's convictions of third[-]degree murder, aggravated assault, possession of firearm prohibited, possession of firearm by minor, and possessing instrument of crime. For third[-]degree murder, the standard range sentence is 84-240 months, mitigated to 72 months, and the statutory maximum is 480 months. For aggravated assault, the standard range is 42-60 months, aggravated to 72 months, mitigated to 30 months, and the statutory maximum is 240 months. For possession of firearm prohibited, the standard range is 30-42 months, aggravated to 54 months, mitigated to 18 months, and the statutory maximum is 120 months. For possession of firearm by a minor, the standard range is restorative sanctions to 6 months, aggravated to 9

- 13 -

months, and the statutory maximum is 60 months. For possessing instrument of a crime, the standard range is restorative sanctions to 9 months, aggravated to 12 months, and the statutory maximum is 60 months. Therefore, the sentence the [c]ourt imposed on Appellant went above the Sentencing Guidelines, but were within the statutory maximum.

At the time of sentencing, the sentencing guidelines were placed on the record in accordance with 42 P[a.]C.S.[] § 9721(d). N.T. Sentencing Hearing[, 2/21/13,] at 42-45. Additionally, the [c]ourt placed numerous reasons for Appellant's sentence on the record:

> In fashioning a sentence, I have considered everything in the pre-sentence report. I have considered the impact on the victims and the victims' family. I have considered the fact that [Appellant]'s conduct caused Mr. Pimental immense[,] immeasurable suffering over six months. I have considered the sentencing guidelines. I have considered the testimony of [Appellant's] probation officers - Juvenile Probation Officers, the testimony of Mr. Snyder and Mr. Heydt. I've consider his juvenile record and his successes and failures during his supervision in the Juvenile Justice System. I've considered his family background. It is clear that he had a very weak family structure. He had virtually no parental supervision. I've considered the fact that he did not do very well in the juvenile system. He did not do very well under supervision. He violated his juvenile probation on a number of occasions. I've certainly considered the testimony of Investigator Carrasquillo and the videotape of Mr. Pimental. I can't even imagine what it would have been like for Mr. Pimental and his family during those long six months that he was confined to a hospital bed before he succumbed to his injuries. And I've certainly considered the testimony of Mrs. Rivera. I have considered the threat to the safety of the public that may be posed by [Appellant] at this time and I have considered the degree of [Appellant's] culpability in fashioning my sentence…. And I have considered the rehabilitative needs of [Appellant]. [Appellant's] conduct caused the unnecessary deaths of two young men. What began as an innocent dance party on a hot summer night turned into a tragedy because [Appellant] brought a gun to the party. [Appellant] was in possession of a gun [and] he was not legally allowed to possess a gun.

*Id.* at 59-60.

> The decision to sentence outside the Sentencing Guideline[s] is not a decision this [c]ourt undertakes lightly. This [c]ourt carefully considered the Sentencing [G]uidelines; Appellant's juvenile record; the testimony of his Juvenile Probation Officers and his failure in the Juvenile Justice System; the seriousness of the crime and the pain and suffering he infl[i]cted on his victim's [*sic*] and their families; the need to protect the community and deter similar future conduct; the recommendation of the district attorney; and statements made by Appellant.

> The crime[s] committed by Appellant [were] incredibly serious and caused immeasurable pain and suffering. This tragedy only occurred because Appellant brought a gun he was not legally allowed to possess to a dance party. His actions resulted in the death of two young m[e]n, one [of] who[m] went through incredible suffering for six months before succumbing to his injuries. This [c]ourt also considered that Appellant had a substantial history in the Juvenile Justice System, … which he did not respond to positively[,] and [he] continued to involve himself in crime.

> Therefore, the [c]ourt properly considered the circumstances of this case, stated on the record the reason why it went above the Sentencing Guidelines and imposed this sentence, and, in light of this, imposed a sentence that was reasonable and not manifestly excessive.

TCO at 13-15.

Based on the court's discussion and the record in this case, we would discern no abuse of discretion in the court's sentencing decision. The court clearly considered the mitigating factors mentioned by Appellant herein, as well as the statutory factors set forth in section 9721(b). It also offered a thorough explanation for his sentence. Accordingly, even if not waived, we

would deem Appellant's challenge to the discretionary aspects of his sentence meritless.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/02/2020

_____

[5] We note that Appellant also cursorily mentions that his third-degree murder sentences are illegal, claiming they exceed the statutory maximum term of incarceration of 40 years.  *See* Appellant's Brief at 19; 18 Pa.C.S. § 1102(d) ("[A] person who has been convicted of murder of the third degree … shall be sentenced to a term which shall be fixed by the court at not more than 40 years.").  At the sentencing hearing, the court initially imposed 20 to 40 years' incarceration, plus a consecutive term of 20 years' probation, for each of Appellant's third-degree murder convictions.  *See* N.T. Sentencing at 68-69.  Appellant is correct that those sentences were illegal. 42 Pa.C.S. § 9754(a) ("In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.").  However, Appellant ignores that the Commonwealth notified the court of the illegality of those sentences, and the court amended them to omit the probationary tail.  *See* N.T. Sentencing at 71.  Accordingly, Appellant's sentences of 20 to 40 years' incarceration for his third-degree murder convictions are not illegal.

- 16 -