COMMONWEALTH of Pennsylvania,
Appellee,

v.

Elaine B. BARNHART, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 31, 1998.
Filed Dec. 30, 1998.

Kurt A. Gardner, Ephrata, for appellant.

Bradford H. Charles, Asst. Dist. Atty., Lebanon, for Commonwealth, Appellee.

Before KELLY, STEVENS and HESTER, JJ.

STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lebanon County for Dealing in Proceeds of Unlawful Activity,[1] Theft by Unlawful Taking or Disposition,[2] Theft by Decep-

1. 18 Pa.C.S.A. § 5111.

2. 18 Pa.C.S.A. § 3921.

3. 18 Pa.C.S.A. § 3922.

4. 18 Pa.C.S.A. § 3927.

tion,[3] Theft by Failure to Make Required Disposition of Funds Received,[4] Tampering With Public Records,[5] Misapplication of Entrusted Property,[6] and Tampering With Records or Identification.[7] We affirm.

Beginning in July, 1992, Appellant, Elaine Barnhart, worked as a fiscal officer at the Lebanon County Life Support Facility, a county-run facility providing care for severely retarded and handicapped people who, in exchange, paid revenues to the facility from income they received in the form of Medical Assistance, Social Security, or Railroad Retirement payments. Appellant's responsibilities were to deposit the payments into patient accounts, and then withdraw the funds as needed for the costs of running the facility, and maintain the facility's accounting books and records regarding patient accounts and the facility's operating expenditures.

In 1994, the facility discovered internal discrepancies in its accounting records and ordered an audit. The audit revealed that from September 1992 to March 1994, over fifty thousand dollars was stolen from the patient's accounts and from the facility. Numerous false entries, all made by Appellant, in the facility's books and records had concealed the theft of funds. The most significant of the false entries was Appellant's attempt to refund the depleted patient's accounts with money from the facility's separate "capital depreciation account," from which the facility had recently withdrawn a substantial amount of funds for roof repairs. Despite the facility's payment in full for the roof repairs, Appellant withdrew from the capital depreciation account an additional thirty two thousand dollars and, in the books, designated the withdrawal as a transfer of funds needed for the roof. Further proof that Appellant participated in the theft was that the records contained many receipts, needed to justify withdrawals from the patients' accounts, which were connected

5. 18 Pa.C.S.A. § 4911.

6. 18 Pa.C.S.A. § 4113.

7. 18 Pa.C.S.A. § 4104.

to Appellant's personal expenditures rather than to the patients themselves.

A financial investigation of Appellant revealed that, during the same time of the thefts, Appellant deposited large amounts of cash into her own personal accounts, thirty-three thousand six hundred dollars ($33,-600.00) of which Appellant could not account for by legitimate means. A large number of the cash deposits into Appellant's personal account matched the amounts stolen from the facility. The investigation into Appellant's finances also uncovered that, between 1992 and 1994, Appellant's daughter's college, Temple University, refunded to Appellant over nine thousand dollars ($9,000.00) which the school designated as tuition overpayment. Though records show that the overpayments came from checks drawn from the account of daughter's father, Jerry Barnhart, evidence showed that Appellant made several deposits into Jerry Barnhart's checking account at the same time the tuition overpayments were made and that Temple paid all of the refunds to Appellant.

The investigations culminated with Appellant being charged with the seven above-listed crimes. After trial, Appellant was convicted on all counts and sentenced to a cumulative sentence of twenty-seven months to five years less one day in the Lebanon County Correctional Facility. She raises two issues on appeal to this Court, namely, that the evidence was insufficient to support her conviction under 18 Pa.C.S.A. § 5111, *infra*, for dealing in the proceeds of unlawful activities, and that the lower court erred in refusing to admit her offer of expert testimony that she could not have understood the methods used by the guilty party to conceal the stolen funds.

■ Appellant argues in the first of her two issues on appeal that the evidence was insufficient to support her conviction under Section 5111.[8] In addressing Appellant's insufficiency claim, we view all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner, and inquire whether sufficient evidence existed to enable the factfinder to find every element of the crime charged proven beyond a reasonable doubt. *See Commonwealth v. Thomas*, 527 Pa. 511, 594 A.2d 300 (1991). Here, Appellant predicates her insufficiency challenge on the assertion that Section 5111's legislative history reveals that transacting in the proceeds of drug dealing is a required element under Section 5111, and that, since no such evidence was ever adduced against her at trial, the Commonwealth failed to support its burden.

■ In reviewing the elements of Section 5111, we first note that when determining the meaning of a statute, a court must begin with the plain meaning of the language used in that statute. *Ludmer v. Nernberg*, 699 A.2d 764 (Pa.Super.1997). A court cannot disregard clear and unambiguous statutory language under the pretext of pursuing the spirit of the statute. *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794 (Pa.Super.1996). It is only when a statute is unclear that the court may embark upon the task of ascertaining the intent of the legislature. *Id.* The part of Section 5111 relevant to our discussion contains clear language which expands the statute's purview beyond transactions involving the proceeds of illegal drug dealing. Indeed, the Section's very title, "Dealing in proceeds of unlawful activities," refers generally to a plurality of possible illegalities and thus belies Appellant's limiting interpretation, as does the body of the statute, which provides in relevant part:

(a) **Offense defined.**—A person commits a felony of the first degree if the person knowing that the property involved in a financial transaction represents the proceeds of *unlawful activity*, conducts a financial transaction which involves the proceeds of unlawful activity under any of the following circumstances:

(1) With the intent to promote the carrying on of the *unlawful activity*.

(2) Knowing that the transaction is designed in whole or in part:

(i) to conceal or disguise nature, location, source, ownership or control of the proceeds of *unlawful activity;* or

---

8. Appellant does not challenge the sufficiency of the evidence underlying her other convictions.

(ii) to avoid a transaction reporting requirement under State or Federal law.

. . . . .

**(f) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

. . . . .

■ **"Unlawful Activity."** *Any activity* graded a misdemeanor of the first degree or higher under Federal or State law.

18 Pa.C.S.A. § 5111 (emphasis added). Section 5111 thus presents explicit language which clearly defines unlawful activity as any felony or first degree misdemeanor, and targets the dealing in proceeds derived from any of those various illegal activities. In this case, Appellant was convicted of, among other things, felony theft, and, as such, committed an offense which amounts to "unlawful activity" as defined under Section 5111.

However, Appellant denies that our review of statutory language can properly end with the statute's definition of "unlawful activities," since, she argues, Section 5111(a)(2)(i)'s undefined concepts of "concealment and disguisement" of the ownership and control of the illegally obtained proceeds "leave[ ] much to interpretation." Appellant's Brief, at p. 14. Therefore, she advocates that this purported ambiguity also necessitates a review of legislative history, which, she argues, will show that the legislature intended to criminalize only those types of concealment, namely money laundering, that are incidental to drug proceeds.

■ Absent a definition in a statute, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail. *Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 658 A.2d 336 (1995). We ascribe to the concepts of Section 5111(a)(2)(i) their plain meanings and conclude that they are not ambiguous or unclear so as to necessitate a review of legislative history to understand the intent of the statute. The plain meanings associated with one's attempts to "conceal" or "disguise" denote an attempt to hide

something from, or to prevent discovery by, others. Read in this way, the statute is unambiguous and is consistent with the legislature's broad rather than restrictive view of unlawful activities as defined under the statute, and we do not, contrary to Appellant's contention, require the context of legislative hearings to give the "concepts" of Section 5111(a)(2)(i) a clear meaning. In fact, to adopt Appellant's interpretation that the statute condemns only the type of concealment incidental to drug proceeds would render the remainder of the statute, which targets any felony or first degree misdemeanor, a nullity. This we refuse to do. *See Hodges v. Rodriguez*, 435 Pa.Super. 360, 645 A.2d 1340 (Pa.Super.1994) (holding that provisions of a statute are to be interpreted, whenever possible, in a manner that gives effect to the entire statute).

In the present case, Appellant executed multiple transactions of stolen funds whereby she transferred monies from business accounts to her personal account and concealed the source, location, and her ownership of these proceeds by coordinating her deposits with deceptive accounting entries or by channeling funds through her ex-spouse's checking account and her daughter's college before making a deposit. The concepts of concealment and disguisement contained in Section 5111(a)(2)(i) clearly contemplate such conduct.

Appellant's final argument in favor of applying the rules of statutory construction to determine the legislative intent behind Section 5111 is that Section 5111 is vague as to whether it was intended to impose a second punishment for the same crime. Appellant believes that the statute gives "meager guidance as to what conduct it applies to[ ]" and concludes that, in her case, its application constituted "double punishment" for Appellant's acts of theft. Appellant's Brief, at p. 14. We disagree.

■ Though the application of Section 5111 requires that an underlying illegal activity—theft, in this case—first occur, the statute does not simply provide a second punishment for the same crime. Rather, as stated above, Section 5111 has elements to it that go

beyond the elements of each of the other criminal statutes under which Appellant was convicted. In this case, Appellant's conviction under Section 5111 is the one conviction which encompasses the entirety of Appellant's misconduct, from her thefts to her knowing concealment of those thefts through various transactions. Said another way, though particular parts of Appellant's course of conduct gave rise to her other convictions, it took her entire course of conduct to give rise to her conviction under Section 5111. It is settled that a single course of conduct may constitute a violation of more than one statutory provision. *See Commonwealth v. Majeed*, 548 Pa. 48, 694 A.2d 336 (1997). Here, it is clear that Section 5111 is not duplicative of the other laws under which Appellant was convicted, but instead is a criminal statute unique from the others in the breadth of its elements. Therefore, we find that the sentence Appellant received by virtue of the lower court's finding her guilty under Section 5111 was not a "double punishment" for her other convictions.

We find that Section 5111 presents unambiguous language which explicitly defines unlawful activity to include any first degree misdemeanor or felony and defines plainly what conduct qualifies as illegal dealing of the proceeds of those unlawful activities. As written, the statute in its entirety presents a clear and consistent design and broad objective policy, and we must conclude that if the legislature had meant to confine Section 5111's scope to dealings in drug money it could have easily done so. The legislature chose, instead, to draft and enact a more wide-reaching statute. Confronted with such clear statutory guidance, the lower court correctly construed Section 5111 to apply to dealings in the proceeds of unlawful activities besides illegal drug dealing. Likewise, the Commonwealth's burden of proof under Section 5111 did not require it to prove that Appellant dealt with drug money.

Appellant has predicated her sufficiency of the evidence challenge solely on the argument that Section 5111 applies only to money laundering incidental to drug dealing, and we have refused to adopt this unduly limiting interpretation. The predicate to Appellant's argument rejected, Appellant's first challenge fails.

Appellant's remaining challenge on appeal is her contention that the lower court committed an abuse of discretion in excluding expert opinion testimony by a certified public accountant, who would have testified that Appellant, given her education and experiences, could not have known how to perform the transactions involved in the within case. Here, the lower court allowed Appellant to present expert testimony regarding the accounting skills needed to conceal the relevant theft, and Appellant was further permitted to testify that, based on her limited education and work experience, she did not possess those necessary skills. However, the court refused to admit expert testimony that Appellant could not have understood how to commit the alleged crime under Section 5111. The court opined that such expert testimony would unduly infringe on the jury's province to determine this ultimate issue, particularly where Appellant could testify on this issue and the jury would be required to assess her credibility. Moreover, the court ruled, the jury would not benefit from such expert testimony where the subject of Appellant's level of understanding was neither beyond the jury's grasp nor within the expert's scope of knowledge.

Pennsylvania law allows expert opinion testimony on the ultimate issue, but gives the trial judge discretion to admit or exclude such ultimate issue testimony depending on the helpfulness of the testimony versus its potential to cause confusion or prejudice. *See Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420 (1987). Given the facts of this case, we cannot find that the lower court abused its discretion in so ruling, since expert testimony on this point would have resulted in a confusing mix of fact and opinion on an ultimate issue for which the jury did not require an expert's clarification. We find Appellant's final challenge to be without merit.

For the foregoing reasons, we affirm the judgment of sentence of the lower court.

Affirmed.