J-A24012-25                    2026 PA Super 18

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 :
  v. :
 :
 :
 :
MICHAEL J. BROWN :
 :
  Appellant : No. 1593 MDA 2024

Appeal from the Judgment of Sentence Entered October 4, 2024
In the Court of Common Pleas of Tioga County Criminal Division at
No(s):  CP-59-CR-0000278-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

OPINION BY BECK, J.:     **FILED:  FEBRUARY 2, 2026**

Michael J. Brown ("Brown") appeals from the judgment of sentence entered in the Tioga County Court of Common Pleas ("trial court") following his convictions of homicide by vehicle and related summary offenses.  On appeal, he raises claims based upon alleged juror misconduct and the trial court's evidentiary rulings.  After careful review, we agree that a juror failed to provide accurate information on the juror questionnaire form, and, under the circumstances of this case, that failure deprived Brown of his ability to intelligently decide whether to exercise a peremptory strike.  We therefore vacate his judgment of sentence on the homicide by vehicle conviction and remand for a new trial.

At approximately 10:30 p.m. on February 11, 2023, Brown, an off-duty Pennsylvania State Police ("PSP") Trooper, decided to illegally cross a double yellow line to pass a vehicle operated by Benjamin DeWalt ("DeWalt").  A dip

in the road prevented Brown from seeing Christine Woodward ("Woodward") driving in the opposing lane. Approximately two-and-a-half seconds after he crossed into the other lane, Brown saw Woodward's headlights. Both drivers took evasive action but collided with each other. Woodward's vehicle caught on fire, resulting in her death.

The jury convicted Brown of homicide by vehicle.[1] Brown filed a timely appeal and a court-ordered concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Brown raises five issues for our review.

1. Whether the trial court committed an error of law by holding that [Brown] waived his right to raise issues of juror misconduct by not employing a paralegal to investigate, both before trial and during trial, the veracity of empaneled jurors; response in juror information questionnaires and to the court's voir dire questions, and to continuously monitor jurors['] social media accounts throughout the trial to ensure compliance with the trial court's prohibitions on social media usage, thus requiring that a new trial be granted?

2. Whether the lower court erred in denying [Brown]'s Motion to Vacate Verdict and Grant New Trial Due to Multiple Indefensible Episodes of Juror Misconduct?

3. Whether the lower court abused its discretion by prohibiting the Commonwealth's expert accident reconstruction from testifying:

   a. In his expert opinion, [Brown]'s actions did not rise to the level of "recklessness" as required by the [h]omicide [b]y [v]ehicle statute;

_____

[1] The trial court found Brown guilty of four of the five summary offenses with which he had been charged.

b.  That the findings of PSP accident reconstruction, as distinguished from his expert opinion, do not support the charge of [h]omicide [b]y [v]ehicle;

c.  That the scientific data recovered from [Brown]'s airbag control module indicates that [Brown] was not engaged in "aggressive driving"; and

d.  That contrary to written PSP accident reconstruction protocol, the lead PSP investigator charged [Brown] with [h]omicide [b]y [v]ehicle without consulting with the lead reconstructionist about whether the reconstruction findings support the … charge.

4.  Whether the lower court abused its discretion by denying [Brown]'s Motion in Limine to prevent the Commonwealth from admitting into evidence ground level daytime photographs of the accident scene given that the crash occurred at 10:45 P.M. on a dark, desolate, rural road, with no artificial light present[?]

5.  Whether the lower court abused its discretion by allowing the Commonwealth to introduce into evidence a safe driving PowerPoint taught to cadets at the [PSP] Academy?

Brown's Brief at 5-7 (footnotes omitted).

**Juror Misconduct Claims**

Brown's first two issues concern his post-trial motion for a new trial based on several instances of alleged juror misconduct. *Id.* at 27-45. The trial court concluded that Brown waived the claims by failing to uncover this information and raise the pertinent information before the jury reached a verdict. Trial Court Opinion, 12/4/2024, at 9-11. Brown's first issue focuses on the propriety of that ruling. Brown's Brief at 27-33. In his second issue, Brown assails the trial court's alternative ruling that the substantive allegations of misconduct do not warrant relief. *Id.* at 33-45. We address

- 3 -

the claims together as the waiver analysis is linked to the nature of the information discovered.

We briefly set forth the relevant factual allegations. Prior to jury selection, prospective jurors filled out the standard juror information questionnaire mandated by Rule of Criminal Procedure 632. Jury selection took place on May 28, 2024, and trial began immediately thereafter. The jury reached its verdict on May 31, 2024, and the trial court set sentencing for August 9, 2024. Brown filed a motion on July 23, 2024, seeking a new trial based on his discovery that three of the jurors provided incorrect answers on their questionnaires.[2] Brown alleged that he learned this information after the verdict.

First, Juror #99, who became jury foreman, answered "No" on the standard form to the question, "Do you have any children?" The motion attached material establishing that Juror #99 is the biological father of three children, born in August 2013, May 2015, and July 2018. *See* Motion, 7/23/2024, at Exhibit H. Brown additionally alleged that Juror #99 had an outstanding arrest warrant from Oregon for charges of reckless driving and

_____

[2] Brown further alleged that Juror #79 engaged in misconduct during the trial based upon two Facebook posts he made on May 30, 2024. The first contained an image referencing "verdict deniers" and the other had an image saying, "Today's secret word is: GUILTY." Motion, 7/23/2024, at 11. Brown argued this shows the juror made up his mind before deliberations began. *Id.* The trial court found that the juror was presumably referencing the verdict reached that day against then-former President Trump. *See* Trial Court Opinion, 12/4/2024, at 15. Based upon our resolution of this matter, we need not address this allegation.

driving under the influence, and attached as exhibits a November 30, 2021 charging document and an outstanding arrest warrant. *Id.*, Exhibits E, G. Brown argued that Juror #99 should have disclosed his fugitive status in response to the question, "Is there any other reason you could not be a fair juror in a criminal case?" but did not.

Second, Juror B.B.[3] answered "No" to the question, "Have you or anyone else close to you ever been charged with or arrested for a crime?" Brown alleged that B.B. was arrested and charged by the PSP for driving under the influence. Additionally, the trial judge repeated this question in open court during jury selection, but Juror B.B. did not respond. The motion represents that B.B. accepted an alternative rehabilitation disposition in Tioga County sometime in 2017.

Lastly, Juror #113 answered "No" to the question, "Have you or anyone close to you ever been the victim of a crime?" The trial judge asked this question in open court, and Juror #113 did not reply. Brown attached exhibits establishing that Juror #113's son had physically assaulted him on May 31, 2020, and was charged with simple assault. Those charges were reduced to a summary harassment. Then, on or about April 11, 2024, Juror #113 was again attacked by his son. The son entered a guilty plea to one count of summary harassment the next day. *See id.*, Exhibits M-P.

_____

[3] The juror questionnaire did not list a number for B.B.

Brown maintained that these misleading answers prevented an intelligent exercise of his right to use peremptory challenges, which frustrated the purpose of securing a fair and impartial jury. Specifically, Brown cited *Commonwealth v. Rosario*, 182 A.2d 75 (Pa. Super. 1962) (en banc), for the proposition that a "person's incorrect answer to clear [v]oir [d]ire questions mislead counsel and prevent an intelligent exercise of the defendant's right of peremptory challenge, a new trial is required." Motion, 7/23/2024, at 18. Brown argued that this constitutes the necessary prejudice to order a new trial.

The Commonwealth filed a reply, arguing that Brown must establish prejudice under the test applicable to claims of after-discovered evidence. *See generally Commonwealth v. Royal*, 312 A.3d 317, 322 (Pa. Super. 2024). That test requires proof, among other requirements, that "the evidence is of such a nature and character that a different outcome is likely" and that "the evidence could not have been obtained before the conclusion of the trial by reasonable diligence." *Id.* (citation omitted). The Commonwealth argued that Brown failed to establish these prongs, as he failed to show "how or when he obtained" the information, "[n]or has he pleaded that the alleged after-discovered evidence would require a different verdict." Commonwealth's Brief in Response, 7/29/2024, at 3. In support, the Commonwealth cited *Commonwealth v. Kelly*, 609 A.2d 175, 175-76 (Pa. Super. 1992), wherein the defendant learned after trial that a juror was statutorily ineligible to serve because of a felony conviction. The *Kelly* Court granted a new trial, holding

- 6 -

that the "potential for prejudice is apparent ... and the legislature has disqualified those persons who are presumptively unable to render fair and competent service." *Id.* at 177. Thus, in the Commonwealth's view, the mere inability to use a peremptory strike was insufficient.

The Commonwealth argued that prejudice therefore cannot be presumed. It distinguished *Rosario*, arguing that we presumed prejudice "based on particularly egregious facts." Commonwealth's Brief in Response, 7/29/2024, at 6. In its view, *Rosario* does not "hold that trial courts may not even consider prejudice whenever a juror provides incorrect information; to the contrary, it expressly recognized that relief may be denied based on a 'complete lack of prejudice.'" *Id.* (quoting *Rosario*, 182 A.2d at 76). The Commonwealth asserted that the trial court would have to issue credibility findings regarding each individual allegation of juror misconduct before finding Brown was prejudiced.

The trial court concluded that Brown waived all juror misconduct claims by failing to uncover the information before the verdict. The court noted that Brown "had four days after the trial began" to research the seated jurors and suggested that a "paralegal could easily have checked" into the jurors' history during those four days. Trial Court Opinion, 12/4/2024, at 11.

Alternatively, the trial court determined that, even "accepting [Brown's] factual allegations about the jurors as true," none of the complaints warranted a finding of prejudice. *Id.* at 5 (emphasis omitted). The court did not address *Rosario*, instead citing for persuasive value the United States Supreme

Court's decision in **McDonough Power Equip., Inc. v. Greenwood**, 464 U.S. 548 (1984). The United States Supreme Court, applying federal rules of evidence, concluded that a new trial is warranted for voir dire defects only if the undisclosed information would have supported a challenge for cause. **Id.** at 556. The trial court concluded that none of the information discovered by Brown met that standard. **See** Trial Court Opinion, 12/4/2024, at 12-16. Finally, the court, applying the after-discovered evidence test encouraged by the Commonwealth, concluded that Brown failed to show he was prejudiced as none of the information undermined the verdict. **See id.**, at 10 ("The verdict was certainly supported by substantial evidence, including defendant's admissions.").

On appeal, the parties reprise their disputes as to waiver and what constitutes prejudice in the context of juror misconduct. As a threshold matter, we do not agree with the Commonwealth and trial court that the test for after-discovered evidence governs. The trial court cited the overwhelming nature of the evidence supporting the verdict, suggesting that some form of harmless error applies. However, the values protected by the voir dire process—i.e., selecting a fair and impartial jury—are not amenable to a prejudice analysis by reference to the evidence supporting the verdict. As the **Kelly** Court recognized, "it would be virtually impossible for a criminal defendant to prove that a juror's prior conviction prejudiced his trial. ... [A]nd because any prejudice suffered ... would not be susceptible to proof, we conclude that [Kelly] need not prove actual prejudice[.]" **Kelly**, 609 A.2d at

177. While **Kelly** addressed a juror who was statutorily ineligible to serve as a juror, the same logic applies here with equal force.

The trial court's due diligence conclusions also derived from the after-discovered evidence test. Again, we find this to be inapplicable to the question of juror misconduct. In **Commonwealth v. Aljoe**, 216 A.2d 50 (Pa. 1966), our Supreme Court held that challenges to a juror's participation "cannot be successfully raised after a jury has been sworn except in those cases where a defendant has been intentionally misled or deceived by the juror or by the opposite party." **Aljoe**, 216 A.2d at 54. Thus, a misleading or deceptive answer by a juror "excuses" a failure to immediately investigate.

The **Rosario** case also implicitly rejects the trial court's due diligence determination. There, defense counsel asked potential jurors if they were related to any law enforcement officers. **Rosario**, 182 A.2d at 75. Each impaneled juror responded in the negative. **Id.** The day after the verdict, defense counsel informed the trial court that two of the jurors "were parents of troopers of the [PSP]" and that their "misstatements … prevented him from properly exercising" his peremptory challenges. **Id.** Counsel informed the court that "he had not learned of these facts until after the verdict had been rendered." **Id.** While the **Rosario** Court did not further remark upon this facet of the case, the failure to uncover the information before trial concluded was obviously not fatal to his claim of juror misconduct.

The question remains as to what constitutes the correct test for due diligence and prejudice in the context of an allegation of juror misconduct.

Brown contends that **Rosario** is directly on point with respect to due diligence and prejudice and thus binds this Court. Brown's Brief at 40. In **Rosario**, the Court en banc awarded the appellant a new trial, despite the Commonwealth's argument that the case was similar to three cases in which appellants did not receive new trials. In **Travis v. Commonwealth**, 106 Pa. 597 (1884), the defendant discovered after the trial that one of the jurors was related to the murder victim. In **Romesberg v. Merrill**, 99 Pa. Super. 197, 199 (1930), the plaintiff moved for a new trial because a juror was related to the defendant by marriage.[4] Finally, in **Commonwealth v. Kopitsko**, 110 A.2d 745 (Pa. Super. 1955), one of the parties requested to unseat a juror during trial upon discovering he was an attorney, whereas the juror had listed his occupation as "Insurance" on the juror form.

We concluded that none of the three cases controlled. We agreed that the juror in **Travis** gave a false answer, but the record established that the juror was "totally ignorant of the relationship" and thus it "could not have prejudiced him" against the defendant. **Rosario**, 182 A.2d at 76. In **Romesberg**, plaintiff's counsel asked the jurors to disclose any relationship with the parties involved in the suit, and the juror "did not understand the question to be an inquiry as to a relationship by marriage and consequently did not answer." **Id.** We concluded that the question posed to the juror "was not clear and was misunderstood." **Id.** Thus, the party waived his complaint

---

[4] The juror's wife was the first cousin of the defendant.

because the attorney failed to conduct any questioning on this topic. *Id.* In *Kopitsko*, the Court found no new trial was warranted because the attorney failed to conduct any follow-up on the listed occupation. *Id.* Thus, in both *Romesberg* and *Kopitsko* "there was no false answer given," and in *Travis*, there was no possibility of prejudice. *Id.* The *Rosario* Court found these cases to be inapposite, however, as the jurors at issue in that case gave false answers, which prejudiced the appellant. *Id.*

> Here, under the uncontradicted statement of defense counsel and the assumption of the trial judge, incorrect answers to clear questions misled counsel, without any fault or neglect on his part, and this prevented an intelligent exercise of the defendant's right of peremptory challenge. This being so, we cannot speculate as to whether the defendant was harmed in fact by this deprivation of his right.

*Id.*

Brown argues that, as in *Rosario*, the jurors in the case at bar gave false answers, and he was prejudiced because he could not intelligently exercise his peremptory challenges. Brown's Brief at 40. The Commonwealth responds that *Rosario* does not control for two separate reasons:

> While this Court acknowledged that a "complete lack of prejudice" could be determinative, it concluded it would not "speculate as to whether the defendant was harmed" where counsel could not intelligently exercise peremptory challenges after being misled. 182 A.2d at 76. *Rosario* therefore did not deem prejudice unnecessary, but rather presumed it on the basis of particularly egregious facts. Even if defendant's view of *Rosario* were correct, moreover, that 1962 decision was effectively overruled by the Supreme Court's 2010 ruling in [*Commonwealth v.*]*Flor*[, 998 A.2d 606 (Pa. 2010),] that relief is available "[o]nly when there has been prejudice[.]" [*Flor*,] 998 A.2d at 639.

Commonwealth's Brief at 13 n.7.

We agree that *Rosario* required a showing of prejudice, but disagree with the Commonwealth's contention that the prejudice in that case flowed from the "particularly egregious facts" of the undisclosed information, and bias could therefore be implied and/or presumed. Nothing in the opinion indicates that the prejudice assessment was linked to the egregiousness of the false answer. Instead, the Court held that the "incorrect answers to clear questions misled counsel … and this prevented an intelligent exercise of the defendant's right of peremptory challenge." *Rosario*, 182 A.2d at 76. Thus, it was the inability to exercise the right to peremptory challenge in an "intelligent" manner that caused prejudice to Rosario, not whether the nature of the undisclosed information naturally lends itself to a conclusion that the juror harbored bias.

That said, we agree that *Rosario* cannot be interpreted to mandate a presumption of prejudice for every incorrect answer. For example, the standard questionnaire form asks for the juror's name, including middle initial. If a juror listed the wrong initial, included a maiden name, or the name was misspelled, those would be, in the words of *Rosario*, "incorrect answers." *Rosario*, 182 A.2d at 76. But those incorrect answers would have no plausible connection to a party's "intelligent" use of a peremptory strike.

We therefore interpret *Rosario* to hold that an incorrect answer to a clear question, combined with a showing that ignorance of the correct answer deprived the attorney of information relevant to make an "intelligent"

assessment of whether to use a peremptory strike, constitutes the necessary prejudice. Applying **Rosario** to these facts, we conclude that Juror #99's response to the question of whether he had any children prevented the intelligent exercise of a peremptory strike. Juror #99 provided an incorrect answer to a question that left no room for ambiguity. In this regard, we conclude that no evidentiary hearing is needed. As the **Kelly** Court ruled, the falsity of the answer controls.

> In the present case, the unambiguous question was asked, and Mr. Thomas, with full understanding of the meaning of the question, answered it falsely. Although the trial court's factual finding that Mr. Thomas did not intend to mislead or deceive is entitled to deference, "have you ever been convicted of a crime?" is not a subjective question.

**Kelly**, 609 A.2d at 177.[5]

Perhaps this false answer would not prevent an intelligent use of strikes under other facts, such as a burglary of a commercial establishment with no victims. But, as Brown contends, he may well have chosen to strike Juror #99 had he known the juror had three young children. **See** Brown's Brief at 17 n.11 ("Given that this juror is the father of three … minor children, how testimony about this death would affect this juror's ability to be fair and

---

[5] The trial court accepted that Juror #99's answer was false, and the Commonwealth does not question the veracity of the materials submitted by Brown in connection with his motion for a new trial. We decline to remand for a hearing on this point because the basis the information is not disputed, and the question itself left no room for misunderstanding as the options were simply "Yes" or "No."

- 13 -

impartial is highly relevant information … when considering whether to exercise a peremptory challenge on this juror."). The evidence at trial established that Woodward, a mother of three children, died a horrific death, as she was conscious after the collision and screamed for help as the vehicle burned.[6] An "intelligent" use of peremptory strikes would extend to potentially striking jurors who have young children and would naturally sympathize with the victim. ***See id.***; Motion, 7/23/2024, at 8 n.5 (noting that Woodward was the mother of three minor children and thus whether a juror had children "is also absolutely critical information" in the use of peremptory strikes). Therefore, under the facts of this case, the incorrect answer prevented an intelligent use of peremptory strikes and this constituted prejudice requiring a new trial.

Turning to due diligence, precedent supports the trial court's conclusion that there is a due diligence component to the determination of whether an appellant is entitled to a new trial based upon alleged juror misconduct. While not framed in these terms, the ***Romesberg*** and ***Kopitsko*** Courts applied a form of due diligence analysis in concluding that no new trial was warranted. The "Insurance" answer in ***Kopitsko*** was generic and the Court concluded that counsel could have simply asked additional questions to determine what type of work the juror did in that field. ***Kopitsko***, 110 A.2d at 747 (noting

---

[6] Brown tried to extract Woodward from her vehicle.

that "trial counsel did not exercise his right to examine the prospective jurors on their voir dire"). Counsel's failure to do so was fatal to his request for a new trial. *Id.* Similarly, in *Romesberg*, the question posed as to whether the jurors had any "relationship" to the parties in the suit was ambiguous and the Court indicated that a more precise question may have uncovered the answer later discovered. *Romesberg*, 99 Pa. Super. at 200 ("It would seem to have been the duty of the attorneys for the plaintiff to satisfy themselves upon this question and to give the jurors a chance of understanding the question."). Thus, these cases support a finding that a due diligence analysis requires consideration of whether there was any reason to conduct an investigation or ask additional questions of the juror.

The question in the case at bar, included on the questionnaire, was straightforward and unambiguous, as was Juror #99's answer. We do not agree with the trial court's determination that Brown was required to divert resources in the midst of trial to research the issue, and, in any event, the record does not contain any facts to support that Brown actually had the resources to do so. To the extent a diligence assessment weighs finality of the criminal process against the defendant's rights, again, *Rosario* dictates that the former must yield as the information was also discovered post-trial and prior to appeal.

- 15 -

Because we agree ***Rosario*** applies to Juror #99's answer about having children, Brown is entitled to a new trial.[7] We therefore need not address any of the remaining claims of juror misconduct or false answers.

### Remaining Issues

We find it appropriate to address two of the remaining three issues remaining on appeal. "Usually the prudent practice of this Court is to avoid commenting on all of an appellant's issues if one issue constitutes reversible error." ***Interest of D.R.***, 216 A.3d 286, 291 (Pa. Super. 2019). However, an exception exists for issues that are likely to recur. ***See, e.g., Adams v. Rising Sun Med. Ctr.***, 257 A.3d 26, 39 (Pa. Super. 2020) ("Having concluded that a new trial is necessary, we need not reach Administratrix's remaining issues except to the extent that they are likely to recur or are relevant to the disposition of the cross-appeal."); ***Commonwealth v. Semenza***, 127 A.3d

---

[7] The Commonwealth cites ***Commonwealth v. Flor*** as a case implicitly overruling ***Rosario***. In ***Flor***, the capital defendant argued on appeal that the jury was impartial based on the fact several jurors cheered after sentencing. ***Flor***, 998 A.2d at 638-39. Our Supreme Court rejected the claim, as "not every act of juror misconduct warrants the declaration of a mistrial. Only when there has been prejudice to the accused does an act of juror misconduct require the granting of a new trial." ***Id.*** at 639.

The situation addressed in ***Flor*** is quite different. The ***Rosario*** case protects the right to select a jury and eliminate jurors who may harbor bias, which is by its nature difficult to prove or unearth. A case like ***Flor***, meanwhile, involves actual comments and behavior that can be assessed for their prejudicial impact. ***Rosario*** remains good law and we are bound to follow it. ***See Commonwealth v. Harris***, 269 A.3d 534, 539 (Pa. Super. 2022) ("As we often recognize, a prior published opinion issued by a panel of this Court constitutes binding precedential authority.").

1, 13 (Pa. Super. 2015) ("we will address Semenza's second issue on appeal, a challenge to the jury instruction defining corruption of minors, so that it does not arise again on remand"); **see also** 5 C.J.S. Appeal and Error § 831 ("Questions not necessary to the final determination of an appeal may be considered if ... the unnecessary issues are likely to recur during further proceedings.).

We opt to exercise our discretion as to two of the remaining claims raised, as the issues are likely to recur, were the subject of extensive litigation, and have been extensively briefed.  The other remaining issue involves a claim that was not properly preserved for appeal, and we therefore decline to address it.

Testimony of Corporal Gary Beadle

In his third issue, Brown argues that the trial court erred by barring testimony on several matters.  Brown's Brief at 45-62.  The following principles are germane to our review:

> When reviewing a decision to admit or to exclude expert opinion testimony, we use an abuse-of-discretion standard.  **See Commonwealth v. Powell**, 171 A.3d 294, 307 (Pa. Super. 2017), appeal denied, 183 A.3d 975 (Pa. 2018).  Abuse of discretion only "occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will."  **Hutchinson v. Penske Truck Leasing Co.**, 876 A.2d 978, 984 (Pa. Super. 2005). In other words, a reasonable judgment by the trial court is not an abuse of discretion, even if this Court disagrees with that judgment.

**Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 881 (Pa. Super. 2019).

Brown argues several points in connection with this claim, all of which relate to Corporal Gary Beadle's opinion that Brown should not have been charged with homicide by vehicle. Corporal Beadle expressed this opinion at Brown's preliminary hearing, at which he opined that Brown's conduct was not reckless.

The Commonwealth filed a motion in limine seeking to preclude Corporal Beadle or any other expert from opining on whether Brown's conduct satisfied the elements of the crime. The Commonwealth argued that any testimony on that point was inadmissible for three independent reasons. First, that "Corporal Beadle is qualified only to offer his opinion of how the crash occurred, and that opinion must be based on his scientific, technical, and specialized knowledge of reconstructing crash scenes." Motion in Limine, 3/4/2024, at 3-4. The Commonwealth averred that his written report was properly limited to "conclusions ... explain[ing] how the crash occurred, based on 'evidence and information available at the time' and made to a 'reasonable degree of investigative and scientific certainty.'" *Id.* at 4 (quoting expert report). Unlike his preliminary hearing testimony, that report did not "say anything about recklessness." *Id.* The Commonwealth maintained that Corporal Beadle's opinion that Brown did not act recklessly was beyond his expertise.

Second, the Commonwealth argued that to the extent his opinion constituted lay testimony and not subject to expert qualification, it was

similarly inadmissible since lay witnesses cannot render an opinion on legal issues. *Id.* at 5-6.

Lastly, the Commonwealth argued that the opinion, regardless of whether it should be classified as lay or expert, should be barred as unhelpful. The Commonwealth argued that the facts were largely undisputed and "the only real issue for the jury to decide is whether defendant's conduct meets the legal standard for recklessness." *Id.* at 7. The motion posited that "Corporal Beadle's opinion of what he thinks the jury's answer to the question should be is neither necessary nor helpful. He has no more specialized training or knowledge in the area of legal recklessness than the jurors do." *Id.* at 8.

The trial court agreed that each of the three theories separately warranted barring the testimony. *See* Trial Court Opinion, 12/4/2024, at 16-17.

Brown argues that the trial court abused its discretion in finding each theory applied. First, regarding Corporal Beadle's ability to opine on recklessness, Brown disagrees that his opinion on recklessness was beyond his expertise. The Commonwealth qualified Corporal Beadle as an expert in the field of accident reconstruction, and Brown submits he was permitted to testify whether Brown, based on his review of the data, operated his vehicle in a reckless manner. Brown cites Rule of Evidence 704, which states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Pa.R.E. 704. *See* Brown's Brief at 56-58. Brown observes that the federal counterpart codifies an exception to that rule for criminal cases: "[A]n expert

witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed.R.Evid. 704(b). Our Supreme Court, however, declined to adopt this exception since it is inconsistent with Pennsylvania law. *See* Pa.R.E. 704, cmt. (citing *Commonwealth v. Walzack*, 360 A.2d 914 (Pa. 1976)). Therefore, in his view "our Supreme Court contemplated the admission of expert testimony on an ultimate issue relating to the mens rea element of the crime charged." Brown's Brief at 57-58.

Separately, while maintaining that Corporal Beadle was not "ever asked to opine on a legal issue," *id.* at 48 (quotation marks omitted), to the extent his testimony would touch on legal issues Brown offers as persuasive value a comparative cite to *Browne v. Commonwealth*, 843 A.2d 429 (Pa. Cmwlth. 2004). *Id.* In that case, the Commonwealth Court affirmed a trial court's decision to exclude testimony from a township engineer as to the legal effect of a particular ordinance. *Browne*, 843 A.2d at 431. The Commonwealth Court held that the trial court did not err because "whether the defendants complied with [the o]rdinance ... is not relevant to the question of whether the defendants acted negligently" in constructing berms. *Id.* at 434.

Brown argues that *Browne* is an example of a case where an expert is called to offer a pure legal opinion. Brown's Brief at 48. In contrast, Corporal Beadle "would testify to an expert opinion on [Brown]'s lack of recklessness," which was "based on correlating the scientific evidence of what [Brown] could

see at the moment he elected to pass with the 'mens rea' element of the charge." *Id.* Therefore, according to Brown, the expert testimony is based on his expertise in the arena of accident reconstruction. *Id.* at 58. Brown posits that his opinion would be helpful because of the expertise "required to recover and interpret scientific data" from Brown's vehicle. *Id.*

Finally, Brown contends the trial court's conclusion that the testimony would be unhelpful "is simply erroneous" since it "fails to acknowledge the depth and breadth of the technical data that [Corporal] Beadle analyzed ... to determine if [Brown] was able to see and had knowledge of the risk when he elected to pass." *Id.*

We agree with the trial court's third reason offered in support of barring the testimony—that the testimony was unnecessary and unhelpful:

> Third, and very importantly, testimony as the [sic] whether [Brown]'s actions constitute "recklessness" were not necessary to help the jury. The jury was more than capable of hearing the testimony, determining the facts, hearing the definition of "recklessness," and applying the law to the facts to render a verdict. "[A]s with lay opinions, the trial judge has discretion to admit or exclude expert opinions on the ultimate issue depending on the helpfulness of the testimony versus its potential to cause confusion or prejudice." *McManamon v. Washko*, 906 A.2d 1259, 1278 (Pa. Super. 2006) (citations omitted).

Trial Court Opinion, 12/4/2024, at 16 (third bracketing in original).

The record reflects that Corporal Beadle's written report did not explore the issue; as such, his preliminary hearing testimony offers the best source for what his testimony would have been. On cross-examination, Corporal Beadle stated, "[t]here was ... no way that [] Brown could see any headlights"

- 21 -

until two-and-a-half seconds from impact. N.T., 9/20/2023, at 200. Brown then asked the corporal about his report. "Throughout … the entire conclusion section … at no time did you conclude to a reasonable degree of scientific certainty that … Brown was reckless or grossly negligent in his actions that evening; is that correct?" *Id.* Over objection, Corporal Beadle agreed with Brown that, "at the point at which [Brown] entered the eastbound passing lane, being in a straightaway with a clear view with no visibility of oncoming traffic, that he, at that point, did not engage in reckless conduct or grossly negligent conduct[.]" *Id.* at 202 (agreeing with this language).

The Commonwealth again objected, arguing that whether to file charges "is not a decision for this witness." *Id.* The court disagreed, and asked, "So, again, just for the [c]ourt being clear, you did not conclude that there was any gross negligence on the part of the defendant … with your analysis?" *Id.* at 203. Corporal Beadle replied, "Correct, Your Honor. I did not conclude that." *Id.* Later, Brown asked, "Can you explain, once again, to [the Commonwealth's attorney] why you, in your expertise, do not believe [Brown] to be reckless?" *Id.* at 209. Corporal Beadle gave a lengthy answer, explaining, in part, that by the time Brown would have been able to see Woodward's headlights "the steering wheel analysis … shows [] Brown reacted to that stimulus." *Id.* at 210. Corporal Beadle then explained he "look[ed] up case law," and cited this Court's decision in ***Commonwealth v. Sanders***,

259 A.3d 524 (Pa. Super. 2021) (en banc), to support his view that conviction is precluded:

> [CORPORAL BEADLE]: It's a 2017 homicide by vehicle case, but it went before the Pennsylvania Superior Court in 2021, and that's where they are defining reckless and gross negligence. And in it, they say in order to have reckless or gross negligence, you have to be made aware of the known hazard and then continue your actions in spite of those known actions. And that's what I used as a fraction [sic] --
>
> THE COURT: And that's what came up with your answer?
>
> [CORPORAL BEADLE]: Correct.
>
> THE COURT: As to why you feel it's not reckless?
>
> [CORPORAL BEADLE]: Correct, Your Honor.

*Id.* at 214. Following a brief discussion, the corporal elaborated that his opinion was based on his conclusion that "Brown could not have seen the known hazard when he started the passing maneuver. When he did become aware of the known hazard, namely Ms. Woodward, he took evasive action." *Id*. at 215. Thus, he concluded that Brown was not reckless.

Corporal Beadle's opinion ignores the Commonwealth's overarching theory that Brown acted recklessly by passing DeWalt's vehicle despite the double yellow line and his knowledge of a dip in the road blocking visibility of oncoming traffic. *See* N.T., 9/20/2023, at 242-43 ("The point that the defense is missing, the point that Corporal Beadle is missing ... the risk is not

- 23 -

that he saw her car at the point that he saw it. The risk is that he ignored the fact you can't see traffic coming in the opposite direction.").[8]

We note that our courts have not definitively addressed whether an expert may ever testify to a pure legal conclusion when offering an opinion on the "ultimate issue." We accept, solely for purposes of this argument, that an expert may do so.[9] Notwithstanding, that Corporal Beadle tied his opinion to an analysis of how *Sanders* would apply to the facts of the case establishes that Corporal Beadle's view involves a pure question of law. The *Sanders* decision was based upon a challenge to the sufficiency of the evidence to support a SEPTA driver's conviction, and the law is crystal clear that "[a] sufficiency challenge is a pure question of law." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017). Corporal Beadle's invocation of *Sanders*, and his explanation thereof, leaves no doubt that his opinion that Brown

_____

[8] Brown concedes that he was aware of the dip in the road based upon his familiarity with that route of travel, but argues, by reference to his statement to investigators, that he did not know that the dip interfered with his ability to see oncoming traffic. Brown's Brief at 54 n.16 ("[Brown] consistently responded while he was aware of the 'dip,' he was not aware that easterly approaching vehicles would be hidden or disappear from view of westerly approaching vehicles."). In this regard, Corporal Beadle's opinion appears to be largely based on crediting Brown's statement. *Id.* at 59 (arguing that Corporal Beadle's "opinion corroborates [Brown]'s statement" that he had no knowledge of the risk when he began to pass).

[9] *But see* 3 Wharton's Criminal Evidence § 13:9 (15th ed.) ("[E]ven in those states that generally allow experts to give an opinion as to an ultimate issue in the case, most courts do not permit an expert to testify to a legal conclusion.").

- 24 -

should not have been charged rests on his own view that the evidence would be legally insufficient.

Brown resists this straightforward conclusion by arguing Corporal Beadle "was [n]ever asked to 'opine on a legal issue.'" Brown's Brief at 48. He frames Corporal Beadle's testimony in terms of "correlating the scientific evidence of what [Brown] could see at the moment he elected to pass with the 'mens rea' element of the charge[.]" *Id.* This distinction is unavailing. Every sufficiency question involves an assessment of the facts of the case, and the two concepts thus cannot be neatly divorced. Corporal Beadle's conclusion reduces to a claim that Brown would inevitably prevail on a challenge to the sufficiency of the evidence to support his conviction.[10]

Brown's remaining arguments are equally unpersuasive. He argues that *Sanders* authorized the admission of the testimony because the officer in that case "testified that in his **expert opinion**, [Appellant] operated her bus in a **reckless**, careless, and negligent manner, which caused the crash." Brown's Brief at 49 (quoting *Sanders*, 259 A.3d at 527) (alteration in original). Brown overlooks that Sanders argued that the trial court erred in admitting that testimony. *Sanders*, 259 A.3d at 528 ("The court committed error in allowing the Commonwealth's crash reconstruction expert to testify that defendant ...

---

[10] This alone shows the testimony would be unhelpful and confusing. If Corporal Beadle's opinion is correct, all Brown has to do is ask this Court to deem the evidence insufficient beyond a reasonable doubt.

operated her bus in a reckless manner.") (quoting brief). We declined to address the claim based upon our conclusion that the evidence was insufficient to support his conviction. *Id.* Thus, the *Sanders* decision does not speak to this issue.

Similarly, Brown cites this Court's recognition in *Commonwealth v. Matroni*, 923 A.2d 444, 446 (Pa. Super. 2007), that the Commonwealth's expert "expressed his unequivocal expert opinion that the cause of the collision between Matroni's car and the tractor trailer was Matroni's reckless driving, including speeding and erratic lane changes." *Id.* at 448. However, the opinion does not mention whether Matroni objected to this testimony, as the Commonwealth did in this case. We simply summarized the evidence presented at trial, and Matroni did not argue that the trial court erred in admitting the opinion. Thus, *Matroni* lends him no support.

As Corporal Beadle intended to offer an opinion on a pure legal issue, the remaining question is whether the trial court abused its discretion in excluding the evidence. We agree with the trial court that "[t]he jury was more than capable of hearing the testimony, determining the facts, hearing the definition of 'recklessness,' and applying the law to the facts to render a verdict," and that Corporal Beadle's opinion on that issue risked confusion. Trial Court Opinion, 12/4/2024, at 16. The court thus did not abuse its discretion.

This Court's decision in **Commonwealth v. Barnhart**, 722 A.2d 1093 (Pa. Super. 1998), involved a somewhat analogous situation. Barnhart acted as an accountant for a county facility. **Id.** at 1094. The facility discovered some discrepancies and performed an auditing, which led to the Commonwealth charging Barnhart with stealing over fifty thousand dollars through false entries. **Id.** at 1094-95. The trial court allowed Barnhart to present expert testimony "regarding the accounting skills needed to conceal the relevant theft, and [Barnhart] was further permitted to testify that, based on her limited education and work experience, she did not possess those necessary skills." **Id.** at 1097. The court refused to admit expert testimony that Barnhart "could not have understood how to commit the alleged crime" based on her lack of expert knowledge. **Id.** The trial court reasoned that such testimony "would unduly infringe on the jury's province to determine this ultimate issue, particularly where [Barnhart] could testify on this issue and the jury would be required to assess her credibility." **Id.** We determined that the trial court did not abuse its discretion:

> Pennsylvania law allows expert opinion testimony on the ultimate issue, but gives the trial judge discretion to admit or exclude such ultimate issue testimony depending on the helpfulness of the testimony versus its potential to cause confusion or prejudice. **See Kozak v. Struth**, 531 A.2d 420 (Pa. 1987). Given the facts of this case, we cannot find that the lower court abused its discretion in so ruling, since expert testimony on this point would have resulted in a confusing mix of fact and opinion on an ultimate issue for which the jury did not require an expert's clarification.

**Id.**

Corporal Beadle's opinion risked the same confusion by presenting the jury with a mix of the facts of his analysis of the vehicular data combined with his opinion on the ultimate issue of Brown's guilt. Corporal Beadle's opinion further risked invading the province of the jury to decide the facts. As noted, Corporal Beadle sought to offer an opinion that Brown was not reckless based exclusively on what Brown did upon seeing Woodward's headlights, not, as was the Commonwealth's theory, based on his decision to pass Woodward at that location in the first place. Therefore, allowing Corporal Beadle to present his opinion that knowledge of the dip was legally irrelevant would tend to usurp the jury's exclusive duty to decide disputed factual issues. **See Commonwealth v. Montavo**, 653 A.2d 700, 705 (Pa. Super. 1995) ("Significantly, expert testimony should not invite the jury to abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion.") (citation omitted).

Therefore, even accepting that Corporal Beadle could lawfully opine on these matters, the trial court did not abuse its discretion by determining Corporal Beadle's view of how the law should apply to a disputed set of facts was unhelpful.

Photographs

Brown's fourth issue addresses the trial court's decision to admit several daytime photographs showing the road from both directions, including the dip

in the road where the accident occurred.  Brown's Brief at 64-68.  Our standard of review is well-established.

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion.  An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Manivannan*, 186 A.3d 472, 479–80 (Pa. Super. 2018) (citation omitted).

"The threshold inquiry with admission of evidence is whether the evidence is relevant."  *Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted).  By rule, "[a]ll relevant evidence is admissible, except as otherwise provided by law.  Evidence that is not relevant is not admissible."  Pa.R.E. 402.  Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Pa.R.E. 401.  Relevant evidence may be excluded if the prejudicial value is outweighed by, among other things, its probative value.  Pa.R.E. 403.

Brown claims that the photographs fail the threshold relevancy test because the crash occurred at night and the pictures "do not represent what the ... drivers saw at the time immediately preceding the accident."  Brown's Brief at 66.  Brown additionally submits that the trial court's conclusion that

photographs of the intersection were relevant misses the point because "the trial court forgets that the Commonwealth introduced multiple daytime **aerial** photos" showing the intersection without objection. *Id.* at 67. He submits that the photographs were prejudicial because "ground level daytime photos have no probative value, and any probative value one might think they have is certainly outweighed by how such photographs would confuse and mislead the jury, thereby again causing irreparable prejudice to [Brown]." *Id.* at 68.

The trial court determined that "the daytime photos were admitted to show the scene as [Brown] would have seen it two times each day as he traveled to and from work." Trial Court Opinion, 12/4/2024, at 19. The court opined that the evidence was thus relevant to "[Brown]'s awareness of the material risk that exists or will result from his conduct." *Id.* at 20 (quotation marks and citation omitted).

We agree with the trial court that the photographs were relevant to the Commonwealth's theory of recklessness. Familiarity with the road is a relevant factor in ascertaining mens rea. *See, e.g., Commonwealth v. Moyer*, 171 A.3d 849, 854 (Pa. Super. 2017) (when affirming Moyer's homicide by vehicle conviction, the Court "consider[ed] that [Moyer] was familiar with the intersection and had driven through it many times" and therefore "infered [sic] that she knew she was turning onto a busy street and knew that a building partially obscured the view of cross traffic on one side"). Brown admitted to investigators that he regularly traveled that same route.

*See* N.T., 5/30/2024, at 6 ("[Brown] acknowledged that his primary route from his home to work every day was utilizing [the road], specifically the segment of road where the crash occurred."). Thus, the photographs were relevant to show the dip, which, in turn, was relevant to whether Brown acted recklessly when he chose to pass DeWalt's vehicle. The trial court did not err in concluding that the probative value of this evidence outweighed any prejudicial effect, and the jury was well aware that the crash occurred at night.

<u>Testimony of Corporal Geoffrey Bush</u>

Brown's fifth and final claim is that the trial court erred by allowing the Commonwealth to introduce evidence during the testimony of Corporal Geoffrey Bush, who provided driving instruction to Brown when he was a PSP cadet. Brown's Brief at 69-71. He confirmed that Brown received a hard copy of a PowerPoint presentation provided to the cadets. The Commonwealth introduced slides from this training, including material addressing defensive driving and the dangers of nighttime driving. *See* N.T., 5/29/2024, at 176-80. Brown sought to exclude these slides in pretrial motions.

The Commonwealth argues that the claim is waived because it was not raised in Brown's Rule 1925(b) statement. We agree that this claim was not included in his concise statement of matters complained of on appeal, nor was it fairly suggested by any issue raise therein, and is therefore waived on that basis. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement

and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

While this issue will likely recur, we decline to exercise our discretion to review this issue. Evidentiary issues are subject to an abuse of discretion standard, **Commonwealth v. Rivera**, 983 A.2d 1211, 1228 (Pa. 2009), and we lack the benefit of the trial court's rationale as a result of Brown's failure to include the claim in his concise statement. Moreover, the briefing on this issue is necessarily without reference to the trial court's reasoning. We are in no position to disapprove the ruling as Brown requests, since we cannot "specifically explain how the trial court abused its discretion." **Commonwealth v. DiStefano**, 265 A.3d 290, 298 (Pa. 2021). The briefing is therefore inadequate for this Court to conduct a review of the claim. **See Drum v. Shaull Equip. & Supply Co.**, 787 A.2d 1050, 1059 (Pa. Super. 2001) (opting to address issue likely to recur on remand where the issue "ha[d] been briefed adequately").

## Conclusion

Judgment of sentence for homicide by vehicle vacated. Case remanded for a new trial on that charge. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/2/2026